THOMAS F. BURKE, as Administrator, etc., of JOHANNA BURKE, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Duty of looking, incumbent upon a person approaching a railroad crossing — contributory negligence — burden of proof.*

It is not sufficient, in order to discharge the obligations which rest upon a person attempting to cross a railroad track, to show that the head was turned in one direction or another; but, to authorize a recovery against a railroad company for damages for the death of a person killed by a train in attempting to cross the track on a highway, there must be some evidence tending to show that the deceased not only turned his head but used his eyes for the purpose of detecting an approaching train, and that in consequence of some obstruction he was unable to detect the danger.

If an approaching train is in plain sight of a person attempting to cross the track, and the person apparently looks but does not see the train, although he could have seen it and avoided it if he had used his eyes, it is manifest that he did not do what he appeared to do, and that he did not comply with the rules of law applicable to the case. ·

The question of the care required of a person in attempting to cross a railroad track is not whether he exercised any care, but whether he exercised the care which the law has said a person of ordinary prudence would exercise under the circumstances.

In an action brought against a railroad company to recover damages, on the ground of negligence, for the death of a person caused by a passing train at a crossing, the burden of proving that the deceased looked for the train before attempting to cross the track rests upon the plaintiff; and a charge which casts such burden upon the defendant, by instructing the jury, in effect, that unless they find that the deceased did not look for the train the plaintiff is entitled to recover, is erroneous.

APPEAL by the defendant, the New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 6th day of March, 1893, upon a verdict rendered at the New York Circuit, and also from an order entered in said clerk's office on the 1st day of March, 1893, denying the defendant's motion for a new trial made upon the minutes.

*D. W. Tears,* for the appellant.

*W. F. Severance,* for the respondent.

VAN BRUNT, P. J. :

This action was brought to recover $5,000 by the next of kin of one Johanna Burke, who was struck and fatally injured by one of the trains of defendant at the crossing of the Spuyten Duyvil and Port Morris railroad, called Hanlon's crossing, on the 26th of July, 1890. On the trial the plaintiff had a verdict for $5,000, and from the judgment entered thereon and from an order denying a motion for a new trial the defendant has appealed.

The question presented upon this appeal is whether upon the conceded facts the plaintiff has shown that the deceased was free from any negligence which contributed to the accident.

It appears from the evidence that the deceased had lived at Spuyten Duyvil, in the same house in which she lived at the time of the accident, upon the east side of the tracks, and immediately in view of the crossing at which she was killed, for about twenty years.

On the 26th of December, 1882, an ordinance was approved by the mayor which required that there should be maintained on each side of steam surface railroads at crossings in the twenty-third ward gates which should be kept down for one minute before the approach of trains for the protection of persons intending to cross the railroad. It appeared that although there were gates at each side of the crossing in question, the gateman who was in charge was not on duty after seven-thirty in the evening and before seven o'clock in the morning, and never had been since the passage of such ordinance and the erection of the gates.

According to the testimony offered upon the part of the plaintiff, the deceased was seen about a quarter-past nine in the evening coming over the crossing and passing along the road, and some five or ten minutes afterward returning and going towards her house, which was beyond the crossing where she was seen.

One witness testified that he saw the woman turn her head up the track and saw her turn it down again, and saw the train from the corner of the house come along, and she just got right in the way of it, and the train came along and took her out of the way.

The witnesses further testified that no bell was rung or whistle blown, and that the train, in their opinion, was running from twenty to twenty-five miles an hour.

The only witness who actually saw the accident, when requested

to give the jury an idea of how quickly this whole thing happened, answered : " It happened — I could not judge how quick it happened. Q. Very quick ?   A. Yes, sir.   Q. Like a flash almost ?   A. Yes, sir."

It was further proved by one of the witnesses on the part of the plaintiff that the deceased passed him going towards Hanlon's crossing on the evening in question, and that he saw the train about seventy-five or one hundred feet before it reached him, and that he heard the noise of the train as it went by, and the " chug," " chug " of the engine.   This witness, however, did not see the accident when it occurred.

It was proved upon the part of defendant, without attempt at contradiction, that the track for a distance of 350 feet from the crossing was substantially straight, and ran side by side with the highway, and that the nearest structure to the crossing, or obstruction to the view, was a building situated 360 feet south of the crossing, and that a person approaching the railway, as the deceased is testified to have done, at any point within thirty-eight feet from the outer rail of the track upon which she was hurt, could see a train approaching from 300 to 600 feet day or night.   It further appears that the headlight on the engine was burning, but there was a conflict of testimony as to the speed of the train, the defendant claiming that it had stopped at a signal station about 700 feet from the crossing and was getting up speed instead of running at full speed. It was also testified upon the part of the defendant that the bell was being rung by the fireman at the time of the happening of the accident.

It, therefore, appears from the evidence that the train must have been in full sight at the time the deceased stepped upon the track. The testimony of the only witness who saw the accident is that she was struck as soon as she stepped upon the track, which could not have occurred had any appreciable interval of time elapsed between her stepping upon the track and the arrival of the train.   The witness at first testified that when the deceased first came along she had a shawl on her head ; but evidently becoming aware of the tendency of this testimony, he stated that it was not exactly on her head, it might have been around her shoulders, and then he boldly took back what he had deliberately sworn to and said he did not see the shawl upon her head at all.

Taking the most favorable view of the testimony offered upon the

part of the plaintiff, at the time that the deceased was at the edge of the track this train must have been in full sight; and if she first looked up the track, and then turned her head around towards Spuyten Duyvil, it is evident she did not look, because if she had looked she must have seen the train.

Now, it is not sufficient in order to discharge the obligations which rest upon a person attempting to cross a railroad track, to show that the head was turned in one direction or another. There must be some evidence tending to show that the deceased not only turned her head but used her eyes, for the purpose of detecting an approaching train, and that in consequence of obstructions, if you please, or of a fog, or something of that kind, she was unable to detect the danger. Where it is plainly apparent that a person by the use of his eyes could have seen the danger and avoided it, it seems to be trifling with the rules of law to say that simply because the head was turned in one direction or another he has, therefore, complied with the plain dictates of ordinary prudence. This rule was expressly laid down in the case of *Tucker* v. *N. Y. Central & H. R. R. R. Co.* (124 N. Y. 308), and seems to be entirely consistent with reason. While railroad companies are held to care and diligence in the management of their railroads in order that accidents to persons who may be compelled to cross the same do not happen, yet a corresponding duty is owed by those who are crossing such railroads of using ordinary care and prudence to avoid the dangers to which they may be exposed. And it has been long settled that it is necessary for a party attempting to cross such an avenue of travel to look to see if there is any danger from an approaching train and if they fail to do that then they cannot recover.

Now, if a person looks she is supposed to look for the purpose of seeing, and if an object is in plain sight and she apparently looks, but does not see it, it is manifest she does not do what she appears to do, and has not complied with the rules of law.

In the case at bar, as already stated, the evidence shows conclusively that the deceased could have seen this train and could have avoided it if she had used her eyes for the purpose for which they were intended.

Upon examination of the charge of the learned court it will be seen that the jury had an erroneous impression in regard to the

burden of proof on this question of care, and the degree of care which the deceased was bound to use.

The court charged that it was the duty of the deceased, as she was about to cross that track, to exercise diligence and care in ascertaining whether or not a train was approaching, and if she failed to exercise the care that you would expect from a prudent person, under the circumstances disclosed by the evidence, then the plaintiff cannot recover in the action. After calling attention to the testimony, the court further said : " You are to determine from this evidence whether in fact Mrs. Burke did exercise any care in crossing the track, and if you come to the conclusion that she did not," etc. It was not a question as to whether she exercised any care, but whether she exercised the care which the law has said a person of ordinary prudence will exercise under these circumstances.

The court further charged : " If you come to the conclusion that she did not look for the train, and by looking could have seen the train, and if you come to the conclusion that she was injured because she did not look for the train, then the plaintiff is not entitled to recover." In other words, the jury were instructed that unless they found that she did not look for the train the plaintiff was entitled to recover ; not, if they found that she did look and could not see the train because of obstruction, which would have presented the issue in a very different form. In the charge as given the burden of showing that she did not look was cast upon the defendant, when the burden of proving that she did look was by the law thrown upon the plaintiff.

It was error, therefore, to refuse to charge as requested that the deceased was bound, in view of the evidence in this case, to turn her head and to look for the train before entering upon the track.

There may be a question also as to the amount of damages. There seems to have been no basis in the proof as to pecuniary damage for the large sum awarded.

Upon the whole case, we think that the court erred in its disposition, and that the judgment must be reversed and a new trial ordered, with costs to appellant to abide event.

Follett and Parker, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.