JOHN DOBERT, as Administrator, etc., of WILLIAM DOBERT, Deceased, Appellant, *v.* THE TROY CITY RAILWAY COMPANY, Respondent.

*Negligence — a person leaving, and passing behind, a motor car struck by a car upon the other track — the questions of negligence are for the jury.*

In an action brought to recover damages for injuries resulting in the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant, it appeared that the intestate was going southerly in a motor car upon the most westerly track of a street railroad laid on River street in the city of Troy; that at the junction of River and Congress streets the car stopped; that the intestate alighted from the rear of the car at its westerly side, passed around its end going easterly, and was struck by a north-bound car passing on the easterly track, which was distant from the westerly track about three feet. There was evidence that the intestate looked toward the approaching car, the distance between which and the car on which the intestate was riding was only one foot. It did not appear that the speed of the north-bound car was diminished at the crossing or at the point where the passengers of the south-bound car alighted, or that it gave any signal or warning of its approach. The rules of the defendant require that when a car is standing upon a crossing the operator of a car, moving in an opposite direction, shall slack up before reaching the crossing.

*Held,* that a nonsuit should not have been granted, and that the questions of negligence and of contributory negligence should have been submitted to the jury.

PUTNAM, J., dissenting.

APPEAL by the plaintiff, John Dobert, as administrator, etc., of William Dobert, deceased, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Rensselaer on the 26th day of February, 1895, upon the dismissal of the complaint directed by the court after a trial at the Rensselaer Circuit before the court and a jury.

*Charles T. Faulkner,* for the appellant.

*Thomas S. Fagan,* for the respondent.

MAYHAM, P. J. :

This action was brought by the plaintiff, as administrator of the estate of William Dobert, deceased, to recover against the defendant for its alleged negligence in the management of one of its motor cars, by which the plaintiff's intestate was killed.

The facts disclosed by the evidence are briefly as follows :

On the 3d day of January, 1893, the intestate was riding in one of defendant's motor cars, in the city of Troy, going in a southerly direction along River street on the westerly track of the defendant's railroad at that point. At the junction of River and Congress streets the car on which intestate was riding stopped to receive and discharge passengers. The intestate alighted from the car at that point, on the right-hand side of the rear platform, the left-hand side of the platform being guarded by a railing, so as to compel all passengers to alight and enter said car upon the right-hand side. Parallel with the westerly track of this railroad at that point is another track three feet distant, used for north-bound cars on such railroad. On alighting from the car at the time in question the intestate passed around the rear end of the car on which he was riding and started in an easterly direction up Congress street to cross the easterly track, and at the moment of stepping upon such track was struck by a north-bound car and killed.

The car on which the intestate was riding was a closed car, which, to some extent, must have obstructed the view of the approaching north-bound car.

The evidence discloses that the intestate on passing around the rear end of the car on which he had been riding looked in the direction of the approaching car. The intervening distance between the bodies of the cars going north and south is fixed by the witnesses at about one foot. The north-bound car seems to have been moving at the ordinary rate of speed of motor street cars. The car which struck intestate was stopped within a distance of three or four feet from where the collision occurred, and when stopped the body of the intestate was under its wheels.

It does not appear from the evidence that the north-bound car lessened its speed on approaching the crossing, or at the point where passengers of the south-bound car alighted; nor does it appear from the evidence that any signal or warning of its approach was given from the north-bound car.

The evidence discloses that the rules of the defendant company require that when a car is standing upon a crossing, the operators of a car moving in an opposite direction shall slack up before reaching the crossing.

At the conclusion of the plaintiff's evidence the defendant moved for a nonsuit and that the complaint be dismissed upon the following grounds:

"*First.* That the plaintiff has failed to establish a cause of action against the defendant.

"*Second.* That the defendant was not negligent.

"*Third.* That there is no evidence to justify the jury in finding the defendant guilty of negligence.

"*Fourth.* That the undisputed proof is that the plaintiff's intestate was guilty of contributory negligence.

"*Fifth.* That it has not been shown affirmatively that the plaintiff's intestate was free from contributory negligence.

"*Sixth.* The evidence shows the plaintiff's intestate was guilty of contributory negligence."

The plaintiff's counsel asked the court to permit the plaintiff to go to the jury upon the question as to whether or not the accident in this case was occasioned by the negligence of the defendant.

*Second.* The plaintiff asked the court to submit to the jury the question as to whether or not the view of the decedent, at the time he approached the easterly track, and met with the accident

that occasioned his death, was obstructed so that he was excusable for not seeing the approaching car.

*Third.* The plaintiff asked to go to the jury on the question as to whether or not the evidence does not show that the deceased exercised ordinary care and prudence in approaching the crossing at the time of the occurrence of the accident.

*Fourth.* The plaintiff asked to go to the jury upon the question as to whether the deceased did not exercise all the precaution he was, by law, required to exercise in approaching the scene of the accident.

*Sixth.* The plaintiff asked to go the jury upon the question of the freedom of the decedent from contributory negligence in every view upon which the question could be raised.

Each of these requests was denied by the court, and to each denial the plaintiff's counsel excepted.

The court thereupon granted the defendant's motion for nonsuit and dismissal of the complaint, to which determination the plaintiff's counsel also excepted.

No rule is better settled than that, where a plaintiff seeks to recover for the negligence of his adversary, he must show affirmatively his freedom from contributory negligence, and where the injured party fails in that particular he must fail in his action, but if the question as to whether or not the party injured was guilty of contributory negligence, is so closely balanced by the evidence that men of ordinary intelligence might reach different conclusions from the same evidence, the rule seems well settled that in such cases the question of contributory negligence must be submitted to the determination of the jury.

It seems to us that the case under consideration comes within the latter rule. The plaintiff's intestate alighted from a car on which he had been transported as a passenger of the defendant, taking the only available means of exit from the car, and upon a crowded thoroughfare sought to cross an adjacent track of the defendant's railroad, over which a car was moving in an opposite direction at the ordinary rate of speed, and which car, as would appear from the evidence, was hidden from the view of the intestate until the very moment of his fatal collision with it. He had a right to cross the other track of the defendant's railroad and pass up the public thoroughfare upon which he was permitted to alight.

It is true that he was bound to recognize the fact, if known to him, of the existence of another track, on which trains might pass in an opposite direction; but it does not appear that he was familiar with this crossing, or that he had any warning of the approach of a car from the opposite direction, or that any warning was given him by the defendant's employees.

It may be that this unfortunate accident was one of those unavoidable occurrences against which ordinary prudence will not guard, and for which the law would afford no indemnity. But that would be a question of fact to be found by the jury from a consideration of the whole case.

It does not appear to us that there was such a want of care on the part of the plaintiff's intestate as to justify the conclusion, as matter of law, that he, by his negligence, contributed to the injury to recover damages for which this action is brought. Doubtless the jury, had the case been submitted to them, might have reached such a conclusion, and if they had, their verdict upon the evidence in this case would not be set aside as entirely unsupported by evidence; but it was so close a question that unless the court must, in all cases, determine without the intervention of a jury the question of contributory negligence, it seems to us that this was one eminently proper to be submitted for their consideration.

In *Moebus* v. *Herrmann* (108 N. Y. 354) the Court of Appeals, in passing upon a question not unlike this in some respects, uses this language: " The duty imposed upon a wayfarer at the crossing of a street by the track of a railroad to look both ways does not, as matter of law, attach to such person when about to cross from one side to the other of a city street. The degree of caution he must exercise will be affected by the situation and surrounding circumstances."

It is true that that utterance was made in reference to an injury inflicted by an ordinary carriage, and not by a railroad car; but in all cases where the recovery is sought because of the alleged negligence of the defendant, and the question of contributory negligence becomes the subject of inquiry, the degree of caution which must be exercised will be affected by the situation and surrounding circumstances, and they become a pertinent subject of inquiry, and where the injured party is shown to have exercised some degree of caution, it

is the province of a jury to pass upon the question of contributory negligence, unless there is such palpable want of care as to constitute legal negligence *per se.*

In the case at bar, as we have seen, the intestate's view of the north-bound track was obstructed by the motor car from which he alighted, and it was a question for the jury, under the evidence in the case, we think, whether the motor car moving north might have been seen or heard by the intestate, in time to enable him to have avoided the injury.

In *Parsons* v. *N. Y. C. & H. R. R. R. Co.* (113 N. Y. 363) it is said : " The rule which prescribes it to be the duty of persons to exercise care and caution in going upon railroad tracks, and to use their senses of seeing and hearing for the purpose of discovering and avoiding dangers, is one frequently found in reported cases, and, as a general rule, is salutary and just. But the duty of active vigilance must be adapted to the circumstances of the case, and if the offending company has, by its own conduct, and by its published regulations, led the public to believe that trains would not be run on its tracks at specified times and places, persons having occasion to cross them have the right to rely on the assurance of the company, and are not necessarily guilty of negligence, when injured by prohibited trains while doing so. The deceased was justified in supposing that no rapidly moving train would come into the station while he remained in the yard and was engaged in communicating with his friends on the west side. * * * Having once looked, and seeing no train, he had a right to assume that none would be coming at such a rate of speed as would preclude him from crossing a single track. It is probably true that if he had looked both ways at the moment of stepping upon the track he could have seen the approaching train, but that might be said of almost every accident of a similar character, and is a degree of vigilance seldom adopted by any one, and would require the impossible feat of looking in opposite directions at the same time, or anticipating the point from which he was to be assailed. The law does not require this ; neither is there any rule which will defeat a recovery in cases of this kind, merely because it was possible for an injured person to discover an approaching train. The law does not forbid persons from crossing

railroad tracks, or impose upon them exclusive responsibility for damages incurred in making such an attempt. The question is, whether the injured party, under all of the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like circumstances. This rule must, in all cases, except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury."

It is not absolutely certain, as seems to have been held by the learned trial judge, that the plaintiff's intestate could have seen the approaching car on the north-bound track until the very moment he was hit by it. A witness who accompanied him, and who, from the testimony, could not have been a step behind him, and who was intending to cross the track, testifies that he did not see the car until it struck the intestate.

It can hardly be said, therefore, that it affirmatively and satisfactorily appears from the case that the intestate could or must have seen the approaching car before the collision.

In *Baxter* v. *Troy & Boston R. R. Co.* (41 N. Y. 505) the court says: " The inquiry is, whether from the evidence it satisfactorily appears that the plaintiff, by looking, could have seen the train in time to have avoided the collision. If so, the plaintiff should have been nonsuited. If not, the case was a proper one for submission to the jury. The plaintiff testified he was well acquainted with the crossing; that he did not look for the train; that he could not have seen it until upon the track if he had, on account of the hill, etc. If this was true, the plaintiff was excused from looking, as the law does not require one to look to see something when it is impossible to see it."

In the case at bar the evidence indicates that the intestate looked in the direction from which the car approached; but the evidence also tends to prove that his vision was entirely obstructed by the intervening car from which he had alighted.

In *Greany* v. *Long Island Railroad Co.* (101 N. Y. 426), Judge DANFORTH, in examining the question of contributory negligence of the plaintiff, after quoting her testimony at some length, the conclusion of which was: " If I had looked earlier I would have seen it, but I did not think there was any need of my looking more than

once and I did not think there was any other train due at that time. I had looked a few seconds before, and then went right on. When I looked I could see about a quarter of a mile. I did not see any train, and then I walked on toward the track, and the train was right upon me before I noticed it."

" At this time the engine at the depot was blowing off steam, and she heard no bell or whistle from the train coming from the east. According to the defendant's time table these trains should not have met or passed each other at this station, but the train going east was behind time. The engineer in charge of the train going west first saw the plaintiff when six hundred feet distant. Can it be said, under these circumstances, that she was bound as matter of law to see the incoming train? Was it not rather for the jury to say whether or not she had made the effort which a prudent person would make in like circumstances? I think it was for the jury, for it cannot be said to be impossible for a reasonable person to conclude that the accident was caused by the negligent running of the defendant's train and not by the omission of a duty or reasonable care on the part of the plaintiff to avoid the collision."

In *Terry* v. *Jewett* (78 N. Y. 342) the court says: " It may be assumed that a railroad corporation, in the exercise of ordinary care, so regulates the running of its trains that the road is free from interruption or obstruction where passenger trains stop at a station to receive and deliver passengers. Any other system would be dangerous to human life and impose great risk upon those who might have occasion to travel on the railroad."

Assuming this to be a correct exposition of the law on this subject, can it be said, as matter of law, that the intestate could not, with some degree of assurance, rely upon the supposition that the defendant would not permit a rapidly moving car to pass a car standing at a crossing, which was receiving and discharging passengers?

The case, as we have seen, does not disclose that the intestate had any knowledge of the method of defendant's running cars at this point, or that there was a north-bound car to pass over this crossing at the very instant passengers were being discharged on it from a south-bound car. The plaintiff's intestate had a right to rely, with some degree of confidence, on the fact that the company,

whose patron he was, would not expose him to imminent hazard at a point at which he was permitted and compelled to alight from its car. (*Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 N. Y. 241; *Gaynor* v. *O. C. & N. R. R. Co.*, 100 Mass. 208.)

We have thus far discussed this question upon authority, without regard to any distinction between the duties and obligations imposed upon persons claiming damages for injuries by steam railroad companies, and those inflicted upon persons by motor cars, or street railways. But there seems to be a well-recognized distinction between the amount of care exacted of persons crossing a steam railway, and that of persons crossing a street railway.

In *Brown* v. *Twenty-third Street Railway Co.* (4 N. Y. Supp. 192) INGRAHAM, J., in delivering the opinion of the General Term of the Superior Court of New York, uses this language : " A person about to cross a city street has to protect himself against, not only railroad cars, but also against wagons and trucks using the street; and while he is bound to be vigilant and cautious, I do not think it can be said to be contributory negligence, as matter of law, because he fails to see an approaching car."

In *Muncie Street Railway Co.* v. *Maynard* (32 N. E. Rep. 343), the court says: " There is a solid foundation for this distinction, and to sanction a rule that would impose the same obligation upon persons using the tracks of a street railway as that which obtains where the plaintiff crosses, or walks along an ordinary railroad track, would be to practically surrender a street to the railway company. This result principle and authority forbid."

We think the case at bar is plainly distinguishable from the cases cited and relied upon, upon the question of contributory negligence, by the learned counsel for the respondent.

In *Burke* v. *N. Y. C. & H. R. R. R. Co.* (73 Hun, 35) the court says : " Where it is plainly apparent that a person, by the use of his eyes, could have seen the danger and avoided it, it seems to be trifling with the rules of law to say that simply because the head was turned in one direction or another he has, therefore, complied with the plain dictates of ordinary prudence. This rule was expressly laid down in the case of *Tucker* v. *N. Y. C. & H. R. R. R. Co.* (124 N. Y. 308), and seems to be entirely consistent with reason."

The soundness of that rule cannot be questioned, but it fails in

its application to the case at bar, because it does not appear that the intestate, by the use of his eyes, could have seen the danger and avoided it. At least, that was so far a doubtful question as to make it the proper subject of inquiry by the jury.

In *Purdy* v. *N. Y. C. & H. R. R. R. Co.* (87 Hun, 97) the court, in discussing the question, uses this language : " He (the plaintiff) knew there were two railroad tracks upon which trains passed in opposite directions. The passage of the train on the down track obstructed his vision in the direction from which the other train came until it had passed the crossing and proceeded some distance beyond."

There is no evidence in the case at bar that the intestate knew that there were two tracks upon which trains passed in opposite directions. That knowledge was an important consideration in determining whether or not he was guilty of contributory negligence.

Within the authorities we are forced to the conclusion that the question of contributory negligence was a question of fact in this case, proper for the consideration of the jury, and that it was error for the learned trial judge to determine, as matter of law, that the plaintiff's intestate was guilty of contributory negligence.

We are also of the opinion, from the evidence in this case, that the question of defendant's negligence should have been submitted to the jury. Assuming, as we must, that the defendant had a right to run its motor cars through the streets of the city, it was manifestly its duty so to manage them as to minimize the risk to human life upon its tracks. It had adopted a rule that its cars, on approaching crossings where passengers were to be received and discharged from other cars, must reduce their speed. We think it was for the jury to say in this case whether that rule was complied with, and whether, if it was not complied with, it was negligence for which the defendant would be liable.

It is a matter of public knowledge that motor cars run with much less noise than steam cars ; that they are under more complete control of the motormen and conductors than steam cars can be ; that their approach to a crossing where passengers are being discharged is much less likely to attract the attention of passengers boarding and being discharged from cars at such crossings than would steam cars, and it was, we think, a fair question for the jury to determine, whether it was not negligence on the part of the defendants to

THIRD DEPARTMENT, DECEMBER TERM, 1895.          [Vol. 91.

allow a car on one track to pass a car receiving and discharging passengers on another track, with intervening space of not more than one foot between the cars, at a rate of speed such as is indicated by the evidence in this case.

On the whole case, we think there were questions of fact upon the evidence, which it was error for the learned trial judge to withhold from the jury, and for that reason the judgment should be reversed.

Judgment reversed and a new trial ordered, costs to abide the event.

HERRICK, J., concurred in result.

PUTNAM, J. (dissenting):

I think the judgment should be affirmed for the reasons stated by the learned trial judge in granting the motion for a nonsuit. (See *Scott* v. *Third Ave. R. R. Co.*, 41 N. Y. St. Repr. 152 ; *Thompson* v. *Buffalo Ry. Co.*, 145 N. Y. 196.)

Judgment reversed and a new trial ordered, costs to abide the event.