SARAH WILLFONG v. THE OMAHA & ST. LOUIS RAILROAD
COMPANY, Appellant, AND W. H. WILLFONG v. TnE
OMAHA & ST. LOUIS RAILROAD COMPANY, Appellant.

**Whistling at Crossings:**   INTERSTATE COMMERCE:   *Police regulations.*
Under Code, section 2072, requiring railroad companies to sound
a whistle before a railroad crossing is reached, a railroad com-
pany, though engaged in interstate commerce and in conveying
the mails, cannot escape liability for disobeying the statute,
though the whistle was out of order through no negligence of the
company, and to have procured another would have delayed the
train, as such provision is a valid police regulation, and its en-
forcement does not interfere with interstate commerce.

**Collision:**   DUTY TO LOOK AND LISTEN:   *Husband and wife.*   Where a
husband and wife, traveling together in a convevance which the
former is driving, are injured in a collision on a railroad cross-
ing, the court cannot properly instruct that, if the wife relied on
her husband to look and to listen and to exercise reasonable care,
she was relieved from so doing herself, since she was bound to
the same degree of care as her husband, and whether she exer-
cised such care was for the jury.

**Failure to Look and Listen:**   NEGLIGENCE:   *Jury question.*   Where
the driver of a vehicle is injured by collision on a railroad cross-
ing his failure to stop to look and to listen is not negligence as
matter of law, as it was for the jury whether, under the circum-
stances, he was in the exercise of ordinary care.

EVIDENCE OF LACK OF SIGNAL:   *Harmless error.*   In an action for in-
juries by collision on a railroad crossing it is not prejudicial er-
ror to permit a witness to state that when he and others were go-
ing to plaintiff's assistance his attention was called to the fact
that no signal was given, where it was admitted that the whistle
was not sounded, and does not appear whether he meant to state
that the bell was not rung.

*Appeals from Page District Court.*—HONS. W. R. GREEN AND
A. B. THORNELL, Judges.

TUESDAY, MAY 13, 1902.

THE plaintiffs in these two cases are husband and wife, and were both injured at the same time by collision with one of the defendant's passenger trains at a highway crossing over its road. The negligence charged is the failure to blow the whistle and ring the bell for the crossing as required by law. It is conceded that the whistle was not sounded. Whether the bell was rung is a mooted question. The train was one which ran from Omaha, Neb., to St. Louis, Mo. It carried local and through mail, and on the night in question had passengers for points in Missouri. It is shown conclusively that when the train started on its run the engine whistle was in good working order, and also that it became disabled, so that it would not work, about 35 miles south of Council Bluffs; that the engineer and fireman both tried to fix it so that it could be used, but were unable to do so with the time and means at hand; that there was no division point where another engine could be obtained, nor any machine shop under the control of the defendant where the whistle could be repaired between the point where its disability was discovered and that where the accident occurred. The plaintiffs were old residents of the neighborhood, and thoroughly familiar with the crossing in question, and with the regular time of this particular train; on the night in question it was about thirty minutes late. The plaintiffs were in a single-seated buggy, with the top up and the side curtains on. Just before the wagon road intersects the railroad, it passes through a cut some twelve or fourteen feet deep, and the railroad also passes through a long cut of about the same depth immediately northwest of the highway crossing. The plaintiffs were traveling due south, and the wind was blowing strong from the south or southeast. When about fifty-five feet away from the railroad track the husband, who was driving, slowed the horse to a walk, and looked out in front of the carriage top, and at the same time listened for a train, but did not hear the approaching train. From where he then was, he could not see it, and he did not see or hear it

until his horse was right to the track, when he made an effort to get across ahead of it, but failed. Verdicts were returned for the plaintiffs in both cases, and judgments rendered thereon, from which the defendant appeals. The cases are submitted to us together.—*Reversed* as to the judgment in favor of the wife, and *affirmed* as to the husband.

*J. G. Trimble* and *G. B. Jennings* for appellant.

*W. P. Ferguson* for appellees.

SHERWIN, J.—The defendant seeks to excuse itself from liability under the statute for failing to blow the whistle under the peculiar circumstances disclosed, and urges that, as it was engaged at the time in interstate commerce and in conveying the mail, it should not be held liable for running its engine without a whistle. The statute is mandatory, and is of undoubted validity as a police regulation of the movement of trains within this state. Nor can the regulation itself be justly said to interfere with interstate commerce, or to in any way attempt to regulate it. It is a police regulation providing for the safety of the public generally. It is not confined alone to the safety of persons who are traveling on the public highways of the state intersecting the railroad track, but it is for the protection of passengers on the defendant's trains as well. Is it unreasonable to hold that an engine drawing an interstate train shall not be run without a whistle when it is shown, as in these cases, that the loss thereof on the road did not occur through the negligence of the defendant? Keeping in mind the object of the statutory requirement, let us examine the authorities applicable thereto. In *Railroad Co. v. Husen*, 95 U. S. 470 (24 L. Ed. 527), Justice Strong, speaking for the court, said: "Many acts of a state may, indeed, affect commerce without amounting to a regulation of it in the constitutional sense of the term. And it is sometimes difficult to distinguish between that which

merely affects or influences and that which regulates, or furnishes a rule of conduct.  *  *  *  While we unhesitatingly admit that a state may pass sanitary laws and laws for the protection of life, liberty, health, or property within its borders,  *  *  *  while, for the purpose of self-protection, it may establish quarantine and reasonable inspection laws, it may not interfere with transportation into or through the state, beyond what is absolutely necessary for self-protection. It may not, under cover of exerting its police power, substantially prohibit or burden either foreign or interstate commerce." That in the exercise of their police powers the states may enact laws which affect commerce between the states, but which, for that reason alone, are not within the meaning of the Constitution of the United States, is well settled. *Railroad Co. v. Fuller,* 17 Wall. 560 (21 L. Ed. 710) ; *Smith v. Alabama,* 124 U. S. 465 (8 Sup. Ct. Rep. 564, 31 L. Ed. 508) ; *Burdick v. People,* 149 Ill. 600 (36 N. E. Rep. 948, 24 L. R. A. 152, 41 Am. St. Rep. 329). In Tiedeman's State and Federal control of Persons and Property (volume 2, page 1053) it is said that: "So far as the regulation interferes with or imposes a burden upon interstate commerce and involves the exercise of an extra state power of control over the business of these corporations, it·is only valid if it be exercised by the national government.  *  *  *  The police regulation of these corporations and of their business by a state government must be confined to those local regulations which, while they interfere with commerce more or less materially, may be enforced without giving to the state authorities an extra-territorial power of control over these corporations and their business." But it does not seem necesary to cite further authority on this proposition, for the appellant concedes that a reasonable police regulation of railroad corporations is legitimate and valid, and we are not here disposed to question counsel's contention that, where such regulation unreasonably affects interstate commerce, it may be invalid, for we are firmly of the opinion that such is not the effect of the statute in question,

if it be held that the defendant is liable thereunder for the damages occasioned by the use of its engine without a whistle. True, it may have been neccessary to delay this train an hour or two to get an engine with a whistle, but that would have been but a very slight interference with its business. It is often the fact that trains are delayed for five or ten hours for other causes, and we know of no instance in which the charter of the corporation has been revoked for the delay. If the train had been derailed in this instance, and 10 or 15 of its passengers killed, the defendant could hardly escape liability on the ground that it had no means of preventing the collision because of inability to sound the whistle. By its course the defendant endangered every life on its train, and all travelers on the public highways crossing its track were also in danger. Surely, it could not be said, in the absence of the authorities cited, that a few hours in the movement of an interstate train is of more consequence than human life. That such a rule would be too commercial and inhuman is manifest from the facts in this case alone. The trial courts properly held that the disability of the whistle was not a defense.

In Mrs. Willfong's case the court instructed the jury that if it found "that the conveyance in which she was riding was under the control of her husband, and that she relied upon him to look and listen, and to take the necessary precautions in reference to trains, then the fact that she did not herself look and listen would not by itself show that she was negligent. On the other hand, by intrusting the matter to her husband, if she did so intrust it, she would thereby be responsible for any failure on his part to use proper precautions, if he did so fail; and negligence in this respect on his part, if there was any, would be imputed to her." The thought of this instruction is that, if Mrs. Willfong relied upon her husband to look and listen and to exercise reasonable care, she was relieved from so doing herself. Under the doctrine which imputes the negligence of the husband to the wife on account of the marital relation, the writer is of opinion that

the instruction is correct, otherwise the wife would be charged not only with her husband's negligence, but with her own, and thus be subjected to a greater degree of care than the law requires. The doctrine of imputed negligence as between the husband and wife is based upon the theory that the wife is in the care of the husband, and, if she is to be charged with his negligence, she ought certainly to have the benefit of his care. But it is not necessary to determine the question in this case, for the reason that, while the doctrine of imputed negligence announced in the instruction is the law of this case, it has been substantially repudiated in the case of *Nesbit v. Town of Garner*, 75 Iowa, 314, and is no longer considered by this court the rule in this state. The instruction was not asked by the defendant, and it was entitled to the correct rule as to Mrs. Willfong's contributory negligence. She was bound to the same degree of care that would be required of her husband or of any other traveler along the highway, and it would then become a question of fact whether she exercised reasonable care under all the circumstances shown. That she did not look and listen herself is stated in the charge of the court and borne out by the record. She was riding by the side of her husband, on the only seat in the vehicle, and it was her duty to take such precautions for her own safety as were reasonable under the circumstances. The jury might have been warranted in finding as a matter of fact that she did so, if the question had been properly submitted to it, although she did not look and listen. 1 Thompson, Negligence 503. On the other hand, it may have found that, if she had looked and listened, she might have seen or heard the approaching train. In other words, it must always be largely a question of fact whether proper care has been exercised under given circumstances. *Funston v. Railway Co.,* 61 Iowa, 452. This theory of the case was not submitted to the jury, but they were directed to the sole inquiry whether the husband was exercising ordinary care, and in this there was prejudicial error, for which there must be a reversal. *Railroad Co. v. Bentz,* 38 Ill.

App. 485; *Railroad Co. v. Hotham*, 22 Kan. 41; *Johnson v. Husband*, 22 Kan. 277; *Johnson v. Railroad Co.*, 91 Wis. 233 (64 N. W. Rep. 753). Because the husband did not stop to look and listen does not establish his negligence, as a matter of law, in these cases. Facts might be presented which would require the court to so hold, perhaps, but they are not presented in these cases. The parties were in a single-seated light buggy drawn by one horse, which was walking as they approached the crossing. Whether the road was rough or smooth does not appear, but it is a matter of common observation and knowledge that an ordinary vehicle of this kind does not make much noise in passing along an ordinary country road, particularly when the horse is walking. And it is for the jury to say whether, in view of all the circumstances surrounding him, he should have stopped in the exercise of ordinary care. 2 Thompson, Negligence 1645; *Reed v. Railway Co.*, 74 Iowa, 194. That the driver may have exercised greater care in approaching the crossing is not controlling. He had the right to expect a compliance with the requirements that the engine whistle be sounded at least 60 rods away, and that the bell be continuously rung until the crossing was passed by the train; and, if he listened properly, and heard nothing, it was for the jury to say whether he exercised reasonable care under the circumstances. Furthermore, there is a sharp conflict in the evidence as to whether the bell was rung as required by the law. A witness was permitted to testify that while he and others were going up the track to where Mrs. Willfong was picked up immediately after the collision his attention was called to the fact that no signal was given for the crossing, and he testified that he heard none. Whether he meant to say that the bell was not rung does not appear, and, as it is admitted that the whistle was not sounded, it does not appear that this testimony was prejudicial.

For the errors pointed out in the case of Mrs. Willfong, it is REVERSED. The case of W. H. Willfong is AFFIRMED.