LAWRENCE v. DENVER & R. G. R. CO.

No. 3167.    Decided July 16, 1918.    (174 Pac. 817.)

1. RAILROADS—COLLISION AT CROSSING—ACTION—WARNING OF APPROACHING TRAIN—SUFFICIENCY OF EVIDENCE. In action against railroad for injuries sustained when train collided with automobile at railroad crossing, evidence *held* to show that the train in approaching the crossing gave the usual and customary warning and signals in blowing the whistle, ringing the engine bell, and sounding automatic electric bell. (Page 423.)

2. RAILROADS — ACCIDENT AT CROSSING — CONTRIBUTORY NEGLIGENCE. Where passenger and driver of automobile approaching railroad crossing, with which both were familiar, failed .to see smoke of approaching engine, and failed to hear noise of fast-moving train, and the blowing and ringing of train's whistle and bell, they were guilty of lack of ordinary care and caution. (Page 423.)

3. RAILROADS—ACCIDENT AT CROSSING—DUTY OF PERSON APPROACHING CROSSING. It is the duty of a person approaching a steam railroad track in actual use to look and listen before crossing it, such track being in itself a constant warning of danger, and sufficient as a matter of law to put a reasonably careful person approaching it on notice of such danger. (Page 423.)

4. RAILROADS—CROSSING OF TRACK—PRESUMPTION. A person attempting to cross a railroad track when an approaching train is in full view will be presumed to have seen what he could have seen if he had looked and to have heard what he would have heard if he had listened. (Page 423.)

5. RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE—QUESTION OF LAW—DIRECTED VERDICT. In action against railroad for injuries sustained in railroad crossing accident, where only possible conclusion from the evidence on the question of contributory

negligence was that plaintiff was contributorily negligent, court should have direct verdict for defendant.[1]  (Page 424.)

6. NEGLIGENCE—IMPUTED NEGLIGENCE—OCCUPANT OF AUTOMOBILE— BUSINESS TRIP.  Where occupant and driver of automobile were returning from a trip to see a piano that the latter was trying to sell former, the negligence of the latter was imputable to former, the trip being in furtherance of common object, and former being joint adventurer and not guest or invitee.[2]  (Page 425.)

7. RAILROADS—ACCIDENT AT CROSSING—DUTY OF OCCUPANT OF AUTO- MOBILE TO WARN DRIVER.  Occupant of automobile approaching rail- road track, in the exercise of ordinary care, must look and listen for approach of train, and, upon being warned of approach of train, must suggest to driver to stop until danger is past, and to protest upon driver's failure to do so.  (Page 425.)

Appeal from the District Court of Utah County, Fourth District; *Hon. A. B. Morgan,* Judge.

Action by L. O. Lawrence against the Denver & Rio Grande Railroad Company.

Judgment for plaintiff.  Defendant appeals.

REVERSED, with directions to grant new trial.

*VanCott, Riter & Farnsworth* for appellant.

*Parker & Robinson* for respondent.

## STATEMENT OF FACTS

This is an action to recover for personal injuries alleged to have been sustained and suffered by plaintiff through the al- leged negligence of the defendant.  Plaintiff in his complaint alleges, among other things, that defendant is a corporation, and that it is the owner of a line of railroad that passes through

---

[1]*Wilkinson* v. *Railroad,* 35 Utah, 110, 99 Pac. 466; *Bates* v. *Railroad,* 38 Utah, 568, 114 Pac. 527; *Shortino* v. *Salt Lake & Utah R. Co.,* 476 Utah, 52, 174 Pac. 860.

[2]*Derrick* v. *Salt Lake & O. Ry. Co.,* 50 Utah, 573, 168 Pac. 335

Springville City, Utah; that on or about March 28, 1916, at about five o'clock p. m., plaintiff was riding in an automobile that was in charge of one Orson Bird, which was being driven in a southerly direction through Main street, Springville City, towards defendant's railroad track, which crosses Main street, or, as it is sometimes called State road; that defendant carelessly and negligently ran its engine against the automobile so as to throw plaintiff against the steering wheel, or some other projection of the automobile, thereby straining, twisting, and dislocating the ligaments in his arm and shoulder, causing great mental and bodily suffering, and causing him to become permanently disabled; that the train was running at a high and dangerous rate of speed, between thirty and forty miles per hour, and that the employees carelessly failed to sound a bell or blow a whistle or give warning of its approach; that at the time of the accident there was a Springville City ordinance to the effect that all trains are prohibited from running through the inhabited portions of the city at a greater rate of speed than eight miles an hour, and that the bells upon locomotives in motion shall in all cases be rung continuously in the inhabited portions of the city.

The answer admits the corporate existence of the defendant and the ownership and operation of the railroad; admits that at the time alleged in the complaint plaintiff was riding in the automobile, and that it was in charge of Orson Bird; admits that the crossing is in the corporate limits of Springville City, but denies the remaining allegations of the complaint. As an affirmative defense defendant alleges in its answer that plaintiff was negligent, and that the driver of the automobile approached the crossing at a high and dangerous rate of speed, without taking the precaution of looking for trains, with his hearing impeded because the wind-shield of his automobile was up and the side curtains down; that plaintiff knew this, and that it was his duty to caution and admonish the driver to go slower and to be on the lookout for approaching trains; that he carelessly failed to admonish or caution the driver to slow down or to be on the lookout; that plaintiff negligently failed to look and listen attentively for trains; that, if he had kept a

sharp and vigilant lookout, he would have seen the train in ample time to admonish the driver to stop, and as a result the automobile ran into the side of the train; that the locomotive whistle was sounded at least a quarter of a mile from the crossing and that the engine bell was rung; that an automatic bell, operated by electricity, at the crossing, which a current of electricity starts ringing when a train is a quarter of a mile from the crossing, was ringing at the time; that plaintiff carelessly failed to hear these signals, and carelessly failed to admonish the driver of the automobile to slow down as it approached the crossing.

The cause was tried to a jury, who returned a verdict in favor of plaintiff. To reverse the judgment entered on the verdict defendant presents this appeal.

Defendant moved the court for a directed verdict "upon the ground that the evidence shows that the plaintiff himself was guilty of negligence, which caused or contributed to the accident, in failing to look and listen attentively and carefully, and thereby ascertain the presence of the approaching train in time to call Mr. Bird's attention to it, and in failing to warn and caution Mr. Bird to drive slower, so that upon ascertaining the approaching train the automobile could have been stopped in time to avoid the collision." The refusal of the court to grant the motion is assigned as error.

McCARTY, J. (after stating the facts as above.)

The facts of this case, briefly stated, are as follows: On March 26, 1916, one Orson Bird, who was in the employ of Taylor Bros., of Provo, Utah, called at the home of plaintiff in Spanish Fork, Utah, and endeavored to sell plaintiff and his wife a piano. Respecting what was said and done on that occasion by and between the parties, Mrs. Lawrence, plaintiff's wife, testified in part as follows:

"He (Orson Bird) had come over to our place and wanted us to go over to Provo to sell us a piano. I told him I didn't want to buy a piano. * * * He said I would enjoy the ride and that it was no harm in riding over to look at a piano. * * * He

did not particularly urge me to go; he suggested we ride over in the car. It was between 1 and 2, after lunch time. * * * When we got through with our mission at Provo and were ready to return, I believe the curtains were down. * * * On our way back we stopped at the Springville post office about twenty minutes."

Plaintiff testified, in part, as follows:

"We came to Provo to look at a piano which Bird was soliciting to sell, and after we examined the piano we came home."

Plaintiff and Bird were in the front seat. Mrs. Lawrence, Mrs. Groesbeck, plaintiff's daughter, and her little daughter, were in the back or rear seat of the automobile. Bird drove the automobile which belonged to his employers, Taylor Bros. The Orem Electric Interurban Railroad track, hereinafter referred to as the Orem track, is located for a considerable distance on and along the street in question, which is sometimes called "State street," as it is the main or principal thoroughfare north and south through Springville City. The Denver & Rio Grande Railroad track crosses this street near the southern part of the inhabited portion of the city. From the Springville post office the parties in the automobile proceeded along this street in a southerly direction parallel with and on the west side of the Orem track, towards Spanish Fork. On this point plaintiff testified as follows:

"As we approached the crossing at Springville we were on the right-hand side of the road—that is, on the west of the Orem track—until we got up to within 100 or 150 feet of the crossing. It was necessary to cross the Orem road to come to the crossing of the Rio Grande. He [Bird] crossed over, slowing up as he crossed. He went right on, and as we got within, to my best knowledge, from twenty-five to thirty-five feet from the track, I saw the train coming."

Bird, a witness for plaintiff, testified in part:

"I was driving on the west side of the Interurban tracks, and crossed over to the east about 150 or 200 feet from the Rio Grande tracks. * * * I slacked up crossing this track, and, knowing the other was right ahead of me, I drove slow from there on. * * * Just prior to approaching the D. & R. G. cross-

ing I would judge I was driving from six to eight miles an hour. * * * I was about twenty or twenty-five feet from the Rio Grande crossing when I first saw the train. * * * It was about 125 to 135 feet east of the point where I was crossing. * * * As quick as I saw the train I took my foot from the gas feed * * * and applied my foot to the brakes and grabbed the emergency and stopped my car. The car ran about twelve to fifteen feet before stopping. * * * The step on the tender of the engine caught the end of the radiator and lifted the car and turned it right around with the engine facing north.''

The evidence shows that there is an electric bell at the crossing, and that about a quarter of a mile to the east thereof there is an oscillator; that as a train approaches the oscillator from the east the vibration of the rail opens the oscillator and in doing so opens the circuit and starts the bell ringing; that on the occasion in question the bell was so arranged that when the circuit opened it would ring one minute and sixteen seconds. The evidence further shows that there is a whistling post approximately a quarter of a mile from the crossing. Notice or warning of trains approaching the crossing from the east is supposed to be given by sounding the whistle at the whistling post.

There is substantial evidence to support the finding of the jury that defendant was negligent in running its train at a high and excessive rate of speed, in violation of an ordinance of Springville City then in force.

The important and decisive question therefore is, was plaintiff, under the facts and circumstances disclosed by the evidence, considered in the light most favorable to him, guilty of negligence as a matter of law? In other words, did plaintiff do, or omit to do, anything on that occasion that, under the law, constituted negligence on his part?

It is vigorously contended on behalf of appellant that the evidence without conflict shows that on the occasion in question the usual and customary warning and signals, the blowing of the whistle, ringing of the engine bell, and the sounding of the automatic electric bell, were timely given, and that the only inference permissible from the evidence is that, if plaintiff

had exercised ordinary care and vigilance in looking and listening as the automobile in which he was riding approached the railroad crossing, he would have seen the approaching train in time to have avoided the collision. On the other hand, counsel for respondent contend with much earnestness that there is a substantial conflict in the evidence as to whether the warning and signals of the approaching train were in fact given.

C. F. Shermer, the locomotive engineer on the train in question, testified on this point in part as follows:

"The first whistle I blew was for the curve, one long and one short, about three quarters of a mile from the crossing. Then when I was right on the curve I whistled for the Springville Station. * * * That was pretty close to half a mile from the crossing. The next time I whistled was for the crossing a quarter of a mile away, two long and two short, just above the crossing. * * * After giving the crossing whistle I answered the semaphore. * * * There were four whistles that day."

This witness further testified that the engine bell was rung continuously from the time the train was within one-half mile of the crossing until after the automobile was hit.

Defendant called twenty-two other witnesses, each of whom testified positively that one or more of the warnings or signals mentioned were given as the train approached the crossing. Some of these witnesses testified that they heard all three signals given before the train arrived at the crossing; others testified that they heard two of the signals, while others testified that they heard but one. Some of the witnesses testified that when their attention was directed to the approaching train by the signals referred to they saw the smoke issuing from the smokestack of the engine before the train came into view. One witness said: "When I first heard the automatic bell I could see a stream of smoke from the engine." All of the twenty-two witnesses last referred to, with the exception of two or three, testified that they heard the whistle before the train could be seen from the vicinity of the crossing. None of them testified that any one or more of the signals were not given. Those who

testified to hearing but one or two only, frankly admitted that all three warnings may have been given.

The evidence shows that prior to and at the time of the accident-the wind-shield of the automobile in which plaintiff was riding was up and the curtains down. Plaintiff testified:

"The curtains were down when we left Spanish Fork on our way to Provo. * * * I knew we would have to cross the Rio Grande track to go back to Spanish Fork. I don't know why I did not suggest to Bird that he put the curtains up so we could see trains better. * * * As we approached the Rio Grande tracks I looked straight ahead and also up and down the track. * * * I heard no whistle—don't pretend to swear that it was not sounded; it might have been. I didn't hear it."

And again:

"I know that with the side curtains down my sense of hearing would be impeded. I wouldn't be able to hear as well with them down as up."

Referring to the automatic bell plaintiff testified:

"I didn't hear it ringing. It might have rung without my knowing it. I don't pretend to say that it was not rung. With the curtains down and the wind-shield up it might have been ringing without my hearing it. Don't think that was the case. I heard the automatic bell ringing just after I got out of the car; heard it ringing when the train backed up. I know that with the curtains down my sense of hearing would be impeded."

Bird testified in part as follows:

"As I approached the crossing I did not hear any engine whistle or bell, nor the street gong. * * * The wind-shield was up. With the curtains down and wind-shield up they would protect us more or less from the weather, and I could hear just as well. * * * From my best judgment I swear the whistle was not sounded."

The witness further testified:

"It [referring to the automatic bell] might have been ringing and I might not pay any attention to it because I didn't depend on that. I would not swear whether it was ringing or

not. I didn't hear it. I have no recollection of hearing it until after the train passed there.''

. Mrs. Groesbeck, plaintiff's daughter, who, as stated, was in the automobile, testified that she ''heard no whistle or bell.''

Plaintiff also called two persons who were on the train that collided with the automobile as witnesses, and each of them testified that he did not hear any of the warnings or signals given as the train approached the crossing. But neither of them ventured the statement that they were not given. And neither plaintiff nor Bird testified that the signals were not given.

The most that can be claimed for the testimony of plaintiff and his witnesses on this point is that it shows that they did not hear the warning and signals, if any were given.

Plaintiff in giving his testimony said in part:

''As we approached the crossing Bird was looking ahead, sitting down manipulating the machinery. * * * I was looking at him to see what he was looking at. * * * I looked to see if he was paying any attention for trains. This was when we crossed the Orem track. He was looking at his steering wheel. He was looking straight ahead. * * * I didn't see him looking out of the side curtains either up or down the track. * * * I saw the train before he saw it. I said to Bird, 'There is a train coming.' If I had not called his attention to the train, I know of no reason why the automobile would not have gone right up on the track in front of the engine. He gave no indication of seeing the train until I called his attention. * * * When we struck the car (automobile) was about stopped.''

And again:

''I had no occasion to tell him anything pertaining to its running.''

Plaintiff also testified that a box elder tree, the trunk of which was from two and one-half to three feet in diameter, and several telegraph poles that stood near the crossing, tended to, and did, obstruct his view of the train at a point about thirty or thirty-five feet from the railroad track. The record shows that there was no foliage on the tree.

The only inference permissible from the evidence is that the warnings and signals mentioned were given. The alleged failure of plaintiff and Bird to hear one or more of them, their failure to observe the smoke issuing from the engine, or to hear the rumble and noise of the fast-moving train 1, 2, 3 in time to have avoided the accident, cannot, in the face of the undisputed evidence, be accounted for or explained on any theory other than that of indifference, inattention, and lack of ordinary care and caution on their part. Each of them testified that he was familiar with the crossing, having passed over it many times. Furthermore, it is a well-recognized rule that a steam railroad track in actual use is a constant warning of danger, and its presence is sufficient, as a matter of law, to put a reasonably careful person approaching it on notice of such danger, and it is the duty of such person to look and listen before crossing it. This doctrine is so well recognized and universally adhered to that it would be a work of supererogation to cite authorities illustrating and supporting it.

It is contended on behalf of respondent that there is substantial evidence that he did look and listen for approaching trains as the automobile neared the crossing. A sufficient answer to such contention is that the undisputed facts show that if he looked and listened he ought to have heard the warnings and signals mentioned, and that if he had exercised reasonable care he would have heard them, and probably would have seen the smoke from the locomotive, and heard the noise created by the rapidly moving train in time to have avoided the accident.

Counsel for appellant in their brief clearly, succinctly, and, as we think, correctly, state the general rule as follows:

"A person before attempting to cross a railroad track, and when an approaching train is in full view, is chargeable with seeing what he could have seen if he had looked, 4 and with hearing what he would have heard if he had listened. In other words, where he apparently looks and listens, but does not see or hear the approaching train, it will be presumed that he did not look or listen at all, or, if he did, that he did not heed what he saw or heard."

The following are a few of the many cases cited by counsel in support of this contention: *Glascock v. Central Pac. R. Co.*, 73 Cal. 137, 14 Pac. 518; *D. & R. G. Co. v. Coffehr*, 30 Colo. 27, 69 Pac. 582; *Woolf v. R. R. Co.*, 79 Pac. 997; *Herbert v. R. R.*, 121 Cal. 227, 53 Pac. 651; *Bilton v. R. R. Co.*, 148 Cal. 443, 83 Pac. 441; *Southern Ry. Co. v. Davis*, 34 Ind. App. 377, 72 N. E. 1053; *Indiana B. & W. Ry. Co. v. Hammock*, 113 Ind. 1, 14 N. E. 737; *Miller v. Truesdale*, 56 Minn. 274, 57 N. W. 661; *Lane v. Mo. Pac. Ry. Co.*, 132 Mo. 4, 33 S. W. 645, 1128; *Hook v. Mo. Pac. Ry. Co.*, 162 Mo. 569, 63 S. W. 360; *Burke v. R. R. Co.*, 73 Hun. 32, 25 N. Y. Supp. 1009; *Dolfini v. Erie R. R. Co.*, 178 N. Y. 1, 70 N. E. 68; *Myers v. B. & O. R. R.*, 150 Pa. 386, 24 Atl. 747; *Haetsch v. C. & N. W. Co.*, 87 Wis. 304, 58 N. W. 393; *Rollins v. Chicago, M. & St. P. Ry. Co.*, 139 Fed. 639, 71 C. C. A. 615; *Westerkamp v. Chicago, B. & Q. Ry.*, 41 Colo. 290, 92 Pac. 687.

We think the facts of the case bring it within the rule announced in the case of *Wilkinson v. Railroad*, 35 Utah 110, 99 Pac. 466; *Bates v. Railroad*, 38 Utah, 568, 114 Pac. 527; *Shortino v. Salt Lake & Utah R. Co.*, 52 Utah, 476, 174 Pac. 860 (recently decided by this court, but not yet officially reported). We invite attention to these cases and the authorities therein cited. The facts of the case last referred to are, in a general way, similar to the facts in the case at bar. We are, therefore, of the opinion that defendant's motion for a directed verdict in its favor should have been granted, and that the court erred in denying it.

The court instructed the jury that if they should find from a preponderance of the evidence that the defendant was negligent in the particulars alleged in the complaint, etc., and that—

"If you further find that the plaintiff was riding in the automobile at the time of the accident at the invitation of Mr. Bird, and that the plaintiff had no control over the driving of the automobile, and that no relation of master and servant or principal or agent existed between the plaintiff and Mr. Bird, then I charge you that the plaintiff is entitled to a verdict against the defendant in this case, *even though you*

*find it to be a fact that Mr. Bird was negligent in the driving and operation of the automobile at the time of the accident,* unless you further find from a preponderance of the evidence in this case that the plaintiff was guilty of contributory negligence, as explained in these instructions, which proximately contributed to the cause of the injury.'' (Italics ours.)

Counsel for defendant excepted to that part of the instruction which we have italicized and has assigned the giving of it as error.

The evidence herein set forth of plaintiff and his wife shows conclusively that plaintiff, on the occasion in question, was neither a guest nor an invitee of Bird, the driver of the automobile, as those terms are usually understood and applied in cases where the question of imputed negligence is involved. Bird and Mr. and Mrs. Lawrence, as shown by the undisputed evidence, made the trip in question from Spanish Fork to Provo and return in furtherance of a common object or enterprise, in which they were in a business sense equally interested. In other words, the trip was a business matter and in no sense a social affair. The case, therefore, falls within the rule announced in the case of *Derrick v. Salt Lake & O. Ry. Co.* (recently decided by this court), 50 Utah, 573, 168 Pac. 335. The negligence of Bird, if he were negligent in the management of the automobile just prior to and at the time of the accident, was imputable to plaintiff. And there is substantial evidence in the record to support a finding by the jury that Bird was negligent. The giving of the italicized part of the instruction was error.

Assuming for the sake of argument, but not conceding, that plaintiff was merely the guest of Bird, and was in no sense responsible for the manner in which Bird operated and managed the automobile while making the trip in question, it nevertheless was incumbent upon him to exercise ordinary care and prudence by making diligent use of his senses of sight and hearing, by looking and listening for trains as the automobile approached the crossing, and to heed the warnings and signals of the approach of the train, and to suggest to Bird that they stop until the danger was over, and to

protest if that was not done. *R. R. Co. v. Boyts,* 16 Ind. App. 640, 45 N. E. 812; *Griffith v. R. R.* (C. C.) 44 Fed. 574; *Aurelius v. R. R. Co.,* 19 Ind. App. 584, 49 N. E. 857; *Read v. R. R.,* 123 App. Div. 228, 107 N. Y. Supp. 1068; *Willfong v. R. R.,* 116 Iowa, 548, 90 N. W. 358; *Davis v. R. R.,* 159 Fed. 10; *Igle v. R. R.,* 5 Boyce (Del.) 376, 93 Atl. 666.

As we have stated, the only conclusion permissible from the evidence on this point is that plaintiff was guilty of contributory negligence in that regard.

For the reasons stated, the case is reversed, with directions to the lower court to grant a new trial; appellant to recover costs.

FRICK, C. J., and CORFMAN, THURMAN, and GIDEON, JJ., concur.