LINDEN, Administratrix, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*September 17, 1913—April 9, 1914.*

*Railroads: Killing of traveler at highway crossing: Signals: Positive and negative testimony: Contributory negligence: Failure to look.*

1. In an action for the killing of a person by a railway train at a highway crossing, the positive testimony of the trainmen, corroborated by that of four disinterested witnesses, that the engine bell was rung continuously as the law requires, is *held* to establish that fact conclusively, as against the negative testimony of witnesses who were not giving their attention to the observation of that fact, but to other matters.

2. Evidence in such case that the deceased had ample opportunity to observe the approaching train as he drove his team toward the track from a point 133 feet distant therefrom, his view being intercepted only for a small part of that distance before reaching a point forty-five feet from the track, from which latter point he had a continuous, clear, open view of the train, and that he neither stopped, looked, nor gave any attention to the train while driving from said point to the track, but manifested the heedlessness of an intoxicated person,—is *held* to show, as matter of law, that his want of ordinary care proximately contributed to cause his death.

APPEAL from a judgment of the circuit court for Taylor county: G. N. RISJORD, Circuit Judge. *Reversed.*

This is an appeal from a judgment entered in favor of the plaintiff for the sum of $3,500 and costs upon a verdict in plaintiff's favor for damages for the death of her husband, who died from injuries received by him in a collision with one of defendant's freight trains on a crossing of defendant's railroad and a highway in the town of Westboro.

Westboro village is an unincorporated village in Taylor county. The railroad crosses the main street of the village at right angles, the railway running from north to south and the highway east and west. It appeared by the evidence that at the place in question the decedent approached the track from the west. The street was free from other teams and vehicles. After decedent passed a millinery store situated 133 feet west from the crossing there was an open view for some 700 to 800 feet to the north along the railroad right of way to a cut, intercepted only by a beer house situated 200 feet north of the crossing and a box car standing on a siding half way between the beer house and the crossing. These two objects partially intercepted his view of the train while he was driving from a point 133 feet west of the crossing to a point forty-five feet from the crossing, and thereafter there was nothing to obstruct his view for a distance of 630 feet north along the track and of trains thereon. It appears that deceased was somewhat hard of hearing and had on the day of the accident been drinking liquor in sufficient quantity to intoxicate him to some extent, and that he drove from a point some 100 feet west of the crossing to a point within forty-five feet of the track without stopping. The engine struck the rear part of the bob-sleighs upon which Linden was riding, throwing him some twenty feet and killing him almost instantly.

The complaint charges the defendant with negligence in failing to sound the whistle or to ring the bell and in running

its train over this crossing at an excessive rate of speed, and that such negligence was the proximate cause of Linden's death. The defendant alleges that the train was not running to exceed twenty-five miles per hour and that the required signals were given as the train approached the crossing, and denied that the train was operated at an excessive rate of speed.

The evidence upon which the plaintiff depends to show that the engine bell was not rung was given by the following witnesses sworn in her behalf: Bergman, Wennerstrand, Roinilla, and Lopno. The witness Bergman stated that he was hitching his horse in front of the Carlson and Dahl store, 360 feet from the crossing, when he witnessed the accident. He saw Linden's team and sleigh when struck by the engine, and says: "They were just going across the track, going east. The whistle was blown just a moment before he was struck. The train was then at the cattle chute, 500 feet from the crossing;" and he further states that that was the only place it did blow. In answer to an inquiry whether the bell was ringing as the engine approached the crossing he said: "It did not ring. I was 360 feet from the crossing. Nothing between me and the track to interfere with my seeing and hearing." He further states that the alarm whistle was the first thing that attracted his attention to the train, which was about 500 feet north of the crossing; that he did not hear anything before that nor think anything about the approaching train. To the question whether he was able to hear anything else while the whistle was blowing he answered: "No, I could not hear anything else." He further testified that he did not think the bell was ringing while the whistle was sounding and that he saw no motion of the bell.

The witness Wennerstrand testified that the first he noticed of the approaching train was when he heard the danger signal blown about 500 feet from the crossing, and that at that time he was about sixty rods from the track driving

his team parallel with the track toward Center street, which crossed the track and on which Linden was driving; that he had paid no attention to the train before the whistle sounded and that he did not hear the bell ringing.

The witness Roinilla testified that she heard the danger whistle while in the postoffice some 103 feet north of Center street; that she rushed out and ran to Center street and was then very close to the track and saw the accident, and that the bell was not ringing. She also stated the bell could not be heard while the whistle was blowing.

The witness Lopno testified that she was in her house on the second floor over Lopno's saloon, which is about 133 feet from the crossing; that she heard the train whistle but did not hear the bell ringing; that she paid no attention to the train before it whistled nor had she noticed it.

Six disinterested persons besides the train crew testified to hearing the train whistle before they heard the danger signal, and four of them testified that the bell was ringing all the time as the engine approached the crossing and until it stopped after striking Linden.

The jury found that the whistle was not blown eighty rods from the crossing, and that the failure to blow the whistle was the proximate cause of the death of Linden. On motion after verdict the court held that the evidence showed that the whistle was blown eighty rods from the crossing, and changed the jury's finding on these issues accordingly. The jury further found that the engine bell was not rung while approaching and passing over this crossing before colliding with Linden; that the train, while approaching and passing this crossing, was running at an excessive and negligent rate of speed, to wit, forty miles per hour, and that the failure to ring the engine bell and the running of the train at the excessive rate of speed were the proximate cause of the collision of the engine with Linden and his team; and awarded damages to plaintiff to compensate her for the pecuniary loss

she had suffered on account of Linden's death. The jury also found that Linden was not guilty of gross negligence nor of a want of ordinary care in driving onto the crossing as he did while the train was approaching and about to collide with him. The court awarded the plaintiff judgment upon the verdict for recovery of the damages as found. This is an appeal from such judgment.

For the appellant there was a brief by *Luse, Powell & Luse,* attorneys, and *Alfred H. Bright* and *John L. Erdall,* of counsel, and oral argument by *L. K. Luse.*

For the respondent the cause was submitted on the brief of *W. P. Crawford* and *John R. Heino.*

The following opinion was filed October 7, 1913:

SIEBECKER, J. The appellant assails the ruling of the trial court in refusing to grant its motion to reverse the jury's finding that the bell was not rung. We have referred in detail to the evidence of the witnesses on whom the plaintiff relies to support the jury's finding on this issue. An examination thereof shows that these witnesses were not giving their attention to observe whether or not the bell was ringing when the train approached the crossing and that their attention was directed to other matters. The most that can be claimed to sustain plaintiff's contention on this point is that these witnesses did not hear the bell ringing. The witness Bergman, who stated that he was in a position to see and hear the bell, also states that he heard the whistle almost continuously and that he could not hear the bell ring when the whistle was sounded. The evidence is clear, as the court found, that the whistle was almost continuously sounded from the time that Linden was so situated that he could see the approaching train until the collision occurred. The engineer, fireman, and brakeman who rode on the engine testify positively that the bell was continuously rung, as the law requires, from the time the crossing signal was given until

the collision occurred. Their evidence is corroborated by four disinterested witnesses, who testify that they heard the bell ringing and that they were so situated that they could hear it and had their attention directed to this fact. The witnesses upon whom the plaintiff relies to establish this fact testify only negatively. Their narrative of the events discloses that their attention was not directly given to the observation of this fact and that they were giving closer attention to other matters within the field of their observation. The negative character of the evidence in support of this finding of the jury is wholly insufficient to sustain it in the light of the positive testimony to the contrary. We are led to the conclusion that the trial court should have granted plaintiff's motion to change the jury's answer to the question in the verdict covering this issue. *Jordan v. Osborne,* 147 Wis. 623, 133 N. W. 32; *Sutton v. C., St. P., M. & O. R. Co.* 98 Wis. 157, 73 N. W. 993; *Wickham v. C. & N. W. R. Co.* 95 Wis. 23, 69 N. W. 982. From the foregoing it results that all questions of negligence charged as the proximate cause of Linden's death, except the negligent running of the train, drop out of the case. The question of Linden's gross negligence as a contributing cause to proximately produce his death is also immaterial in view of our conclusion upon the point of his want of ordinary care.

The jury found that the defendant company was negligent in running its train over the crossing in question at a dangerous rate of speed and that such negligence was the proximate cause of Linden's death. This brings us to the consideration of the question presented by the defendant's exceptions: Does the evidence show as a matter of law that Linden was guilty of a want of ordinary care which proximately contributed to produce his death? The facts are practically without dispute and tend to show that the decedent had ample opportunity to observe the approaching train as he drove toward

the track from a point 133 feet distant therefrom, and that his view could be intercepted only for a small part of this distance by the beer house and car before reaching a point forty-five feet from the track, from which point he had a continuous, clear, open view of the approaching train. The claim that piles of railway ties interfered with his view within this forty-five foot space is not sustained, as these piles of ties were not high enough to interfere with seeing the approaching train. The only reasonable explanation of his collision with the train, in the light of the situation and Linden's ability to see it, is that he omitted to look for it, or, if he did look and see it, that he recklessly drove onto the track when the train was so near as to be obvious that it must collide with him. In addition to these facts and circumstances shown by the situation, we have the evidence of witnesses to the effect that they saw and observed that he neither stopped, looked, nor gave any attention to the train in driving onto the track from the point forty-five feet west of it; and that he manifested the heedlessness of an intoxicated person in the presence of imminent peril to his life. In no conceivable way does the evidence permit of an interpretation from which the inference could be drawn that he exercised ordinary care in approaching the crossing and in driving onto it in view of the peril of being run down by the train. It is plain that he was guilty of a want of ordinary care and prudence in driving onto the track as he did and that such want of care proximately contributed to cause his death. The inevitable conclusion necessarily follows that the court erroneously refused to grant defendant's motion to so find as a matter of law and to change the answers to the questions accordingly. The answers to the questions of the verdict should have been changed as requested by defendant's motion, and upon the verdict so modified judgment dismissing the complaint should have been awarded.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to change the answers to the questions as indicated in the opinion and thereupon award judgment dismissing the plaintiff's complaint.

A motion for a rehearing was denied, with $25 costs, on April 9, 1914.