HALL v. WEST JERSEY & S. R. CO.

(Circuit Court of Appeals, Third Circuit. July 30, 1917.)

No. 2222.

1. RAILROADS ⊕═350(28)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLI-GENCE.

Act N. J. March 31, 1909 (P. L. p. 54), which provides that, where a railroad company has assumed to establish and maintain safety gates at a crossing, in any action to recover for the death or injury of a person at such crossing at a time when the gates were not down the question of contributory negligence shall be one to be determined by the jury, does not deprive the court of the power to determine such question as one of law, where it arises on undisputed facts.

2. COURTS ⊕═352—FEDERAL COURTS—PROCEDURE—STATE STATUTE.

Regarding such statute as establishing a rule of procedure, it does not apply to a case brought in a federal court in another state.

3. RAILROADS ⊕═327(12)—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLI-GENCE.

Plaintiff and six others were taking a pleasure ride in an automobile, which one of them was driving, when it struck the side of a railroad train

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

at a grade crossing, killing some and injuring others of the riders. Plaintiff knew they were approaching a crossing, and was sitting on the knee of another of the party on the front seat beside the driver. The view of the track was obstructed by a building until they were within 15 feet of it, when it could be seen for 2,000 feet. *Held*, that it was as much the duty of plaintiff as of the driver to look out for the train and give warning of its approach, and that under the undisputed facts she was chargeable with contributory negligence, which defeated a right of recovery.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by Jane T. Hall against the West Jersey & Seashore Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

A. T. Ashton, of Philadelphia, Pa., for plaintiff in error.

Sharswood Brinton and John Hampton Barnes, both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case Miss Jane T. Hall had brought suit in a state court against the West Jersey & Seashore Railroad Company, to recover damages for personal injuries. The cause was thereafter duly removed to the court below on the ground of diversity of citizenship. On trial that court gave peremptory instructions for the defendant. On entry of judgment on such verdict, the plaintiff took this writ. The case turns on the alleged contributory negligence of the plaintiff. On the part of the defendant it is contended that the proof adduced by the plaintiff so clearly showed contributory negligence on her part that the court was bound, as a matter of law, to so hold. On the part of the plaintiff, it is contended that under the New Jersey statute of 1909 (P. L. p. 54), quoted in the margin,[1] the court had no power to determine that question itself, but was bound, under that statute, to submit the cause to the jury.

[1] We do not understand the New Jersey statutes have abolished the defense of contributory negligence, or relieved the court from deciding the question of law, where it arises, whether the undisputed facts show a plaintiff is guilty of contributory negligence. Shoemaker v. Central R. R. of N. J. (N. J. Sup.) 89 Atl. 517. In Erie Co. v. Schmidt, 225 Fed. 517, 140 C. C. A. 655, we had before us the New Jersey crossing act, chapter 96 of 1909, quoted in the margin.[2] We

[1] "Whenever any railroad company shall have assumed to establish and maintain what are known as safety gates at any railroad crossing in this state, and a person is killed or injured at any such crossing by being struck by a locomotive or train when attempting to cross the tracks at a time when such gates are not down, * * * that in all such cases the question whether the person so killed or injured, upon attempting to cross such railroad crossing, at a time when the safety gates at such crossing are not down, was or was not guilty of contributory negligence shall be a question to be determined by the jury, in all actions brought to recover damages."

[2] "1. Wherever any railroad whose right of way crosses any public street or highway, has or shall install any safety gates, bell or other device designed to protect the traveling public at any crossing or has placed at such cross-

there said, and the same was restated and followed in Delaware, etc.,
Co. v. Welshman, 229 Fed. 84, 143 C. C. A. 358, L. R. A. 1916E, 816:

"In our opinion, the railroad is mistaken in supposing that the act compels
the trial judge to submit to the jury every case of injury or death at a pro-
tected grade crossing in New Jersey. The evidence may establish contributory
negligence so clearly that the judge would be bound to give the jury binding
instructions in favor of the railroad. The act does no more than declare as a
rule of evidence that in certain situations the mere fact that the deceased did
not stop, look, and listen shall not of itself defeat recovery; but it does not at-
tempt to lay down a rule that every grade crossing case where contributory
negligence is alleged must be submitted to a jury."

[2] Regarding, therefore, such statutes as rules of procedure, it is
clear that such rule of procedure, enacted in New Jersey, could not
affect the procedure of a case litigated in the court below, and therefore
the District Court for the Eastern District of Pennsylvania had the
right, and it was its duty, to hold that, if the facts clearly showed the
plaintiff contributed to the accident, she could not recover. This duty
it met, and the only question here involved is whether it erred in de-
ciding that question as a matter of law and refusing to submit it to
the jury.

[3] We have carefully examined the proofs. We find no disputed
questions involved. Without reciting those proofs, it suffices to say
they tend to show the plaintiff was injured when the auto in which she
was riding ran into the side of an electric train which was passing
over a grade crossing. The auto, a five-seated car, in which the
plaintiff and six others were taking a pleasure ride, approached the
grade crossing about 9 o'clock on a clear evening the latter part of
May. Three women were on the front seat of the car; one the woman
who was driving and was killed, the second a woman on the seat be-
side her, and the plaintiff on the latter's knee. The plaintiff knew they
were approaching the crossing, and was in a position to observe and
warn the driver of danger. We had occasion in Brommer v. Penna.
R. R. Co., 179 Fed. 580, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924, a
case from New Jersey, to consider the pertinent decisions of that
state, and referring to Brommer, the driver of the machine, and Hen-
derson, the pleasure passenger, we there said:

"Henderson was not a passenger, and Brommer was not a quasi carrier;
but the whole party were united for a common purpose and had a common ob-
ject in view. Brommer had no greater duty or obligation toward the others
than they toward him. It is true he was running the machine; but if anything
threatening the general safety of the party came within the knowledge of any

_____

ing a flagman, any person or persons approaching any such crossing so pro-
tected as aforesaid, shall, during such hours as posted notice at such crossing
shall specify, be entitled to assume that such safety gate or other warning ap-
pliances are in good and proper order, and will be duly and properly operated
unless a written notice bearing the inscription 'out of order' be posted in a
conspicuous place at such crossing, or that the said flagman will guard said
crossing with sufficient care whereby such traveler or travelers will be warned
of any danger in passing over said crossing, and in any action, brought for in-
juries to person or property, or for death caused at any crossing protected as
aforesaid, no plaintiff shall be barred of the action because of [the] failure
of the person injured or killed to stop, look and listen before passing over said
crossing.'"

of them, and he or she by timely warning was able to warn Brommer of such danger, and as a direct and proximate result of not doing so he or she suffered damage, how can it be said this was not negligence, and that thereby he or she did not contribute to causing the accident? * * * It follows, therefore, that Henderson was under obligations to take due care of his own safety. He was not a passenger for hire. He was engaged in the common purpose of a pleasure ride with the driver of the machine. He knew they were approaching a railroad crossing. Being free from the engrossing work of operating the machine, and occupying a seat beside the driver, he was in an even better situation than Brommer to look out for the safety of the machine. * * * He knew they were approaching a railroad crossing. As he approached he saw the view was shut off from the track. Thus ignorant of the safety or danger of the crossing, prudence, self-preservation, and the positive demand of the law called on him to stop before attempting the passage. The machine was under control, by his own account, only moving at a two-mile rate. Under the circumstances he was called on to act, or, if he chose to keep silence and join in chancing the crossing, the law will not hold him faultless of his share of bringing about the accident."

Tested by this rule, it is quite clear that this unfortunate plaintiff contributed her share toward this melancholy accident. She knew they were approaching this crossing,[3] and attempting to pass it when the track was shut off from view by a building which stood some 15 feet from it. Had they looked after they passed the building and for the next 15 feet, they could have had a view of 2,000 feet down the track. Indeed, had they looked when they were on the first and second tracks, they could have seen the track for half a mile. That they did not look at all, and only saw the train when they struck it, shows only too plainly that they simply attempted to cross the track without looking and ran into the car. Under such circumstances, there was no disputable issue. The evidence simply showed the plaintiff and the unfortunate person who was driving the car took no care or precaution whatever, and blindly went forward, the one to her death and the other to her distressing accident, in such a careless and negligent way that they contributed to the accident. Under such circumstances, the judge below was justified in giving binding instructions. Under such circumstances, testimony that one looked and said nothing cannot avail to create an issue; for, if one looked, she must have seen the train, which was then just on them. The fact that they went ahead, and that the auto ran into the train, simply shows that the persons on the front seat did not look, but went ahead without any precaution, and for an auto to attempt to pass, without precaution, a grade crossing, where a view of the track is obstructed, is chancing the crossing, and chancing danger is not due care.

The judgment below is affirmed.

[3] Miss Hall's testimony was: "Q. Just before this accident happened, did you know you were coming to a railroad crossing? A. I saw the railroad crossing; yes, sir. Q. What did the automobile do when you were getting to the railroad crossing? A. It slackened up. Q. What did you do? A. I looked both ways. Q. Did you see anything? A. Not a thing. Q. What was there, as the automobile slackened up first, to prevent your seeing down the track? A. There was a house on the corner. * * * Q. You started to go across the tracks, and what happened to you? A. I was hit by the train. Q. When did you first see the train? A. I did not see a thing. Q. I mean, when did you first see the train that struck you? A. Oh, when it was on us. Q. You mean on top of the automobile? A. Yes."