## MARTHA PLACHETKO v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

February 8, 1918.

No. 20,554.

**Master and servant — failure to warn servant of danger — evidence not conflicting.**

In this action for wrongful death, alleged to have been caused by defendant's negligent failure to give the customary warnings before moving cars in a repair yard, it is *held*:

(1) The evidence affirmatively shows that the customary warning was given deceased by calling out in his presence that the cars between which he was caught were about to be moved.

(2) The testimony fails to show that defendant omitted to ring the bell on the locomotive at the time the cars were moved. The positive direct testimony of witnesses to the fact that the bell was ringing was not overcome, nor made a question for the jury by the equivocal impeachment of one or two witnesses, nor by the testimony of others who were absorbed in their work, and who could only testify that they were not conscious of its ringing and could not say whether it did or not.

Action in the district court for Ramsey county by the administratrix of the estate of Joseph Plachetko, deceased, to recover $25,000 for the death of her intestate while in defendant's employ. The answer alleged that plaintiff's intestate was negligent, that the physical conditions surrounding the work were patent and that he assumed the risk. The case was tried before Michael, J., who granted defendant's motion for a directed verdict. From an order denying her motion for a new trial, plaintiff appealed. Affirmed.

*Hall & Tautges,* for appellant.

*Barrows & Stewart,* for respondent.

HOLT, J.

The appeal is from the order denying a new trial, there having been a verdict directed in favor of defendant.

· [1]Reported in 166 N. W. 338.

The main question is whether there was any evidence to go to the jury of the negligence alleged as the cause of the death of plaintiff's intestate. Plachetko, plaintiff's intestate, was one of about 80 men working for defendant in the repair of cars at its repair yard in St. Paul. This yard consisted of three parallel tracks, holding about 40 cars each when spaced a distance of 5 to 6 feet apart. The track nearest the river was known as number 1, the next number 2, and the next number 3. The distance between numbers 1 and 2 was about 18 feet, and between 2 and 3 about 14 feet. This yard was protected from outside interference by a danger signal and a derail device on the lead track. When the men had repaired a desired number of cars a locomotive and train crew were sent into the yard to pull them out, and to set in and space others needing repair. It was the aim to have this moving done during the noon hour when the repairers were at lunch, but at times this work could not be finished within the half hour or hour allotted for lunch. On March 4, 1916, while the repairers were eating their lunch in a shanty located about the middle of this yard, the train crew came in with a locomotive and pulled the repaired cars on track 3, and were finishing placing cars needing repairs back onto that track, when the men returned from lunch. Then the locomotive backed out onto the lead and came in on track 2. The foreman for the repair crew and one or two assistants meanwhile were passing up and down both sides of the 12 or 14 cars to be moved on track 2, and calling out the customary warning to the men that track 2 was to be pulled. The testimony leaves no doubt that this warning was given within 3 or 4 feet of Plachetko, who had set down his tool box beside a car just set in on track 3 and was standing near by. He had evidently selected that car as the one upon which to work. The men usually worked in pairs. Plachetko's partner on coming back from lunch had stepped into a box car on track 1 to show the man working thereon how to proceed. When the warning had been called out, and one of the train crew had passed to the further end of the cars to be pulled for the purpose of seeing that the couplers were in proper shape, the signal was given for the locomotive to come ahead, the locomotive having in the meantime approached within 6 or 8 feet of the first car. The signal was obeyed. Just about this time Plachetko attempted to pass to the other side of track 2 by going between the third and

fourth car from the locomotive, and was caught between the bumpers, receiving such severe injuries that he died within a short time.

The negligence alleged was the moving of the locomotive and cars without giving notice and warning thereof by sounding whistles or ringing the bell, or both, contrary to the general custom and rules. The evidence discloses that the usual practice was to give two warnings, one by calling out before the locomotive was started against the cars. The other was to ring the locomotive bell as soon as it began to move. As to the former it affirmatively appears that it was given so that the deceased unquestionably heard and understood that the cars on track 2 were about to be pulled. He had worked in this yard for a considerable time and well knew the practice. So that no negligence can possibly be predicated upon a failure to give the customary oral warning.

The only other negligence attempted to be established was failure to ring the bell. A rule, as well as a custom, required the bell on the locomotive to be ringing when cars were being moved in this yard. Three witnesses testified positively that it was ringing. It was an automatic bell. No witness attempted to state as a fact, that it did not. The conclusion of one that it did not ring was properly stricken, because it clearly appeared that all he meant to convey was that he did not notice whether it did or not. He was inside a box car chiseling a hole in its floor, and of course occupied with his work and had no occasion to listen for danger signals. That was also the effect of the testimony of all the other witnesses of whom inquiry was made on that subject. Not one of them was listening to hear the bell ring, or was concerned about the matter. As said in Cotton v. Willmar & Sioux Falls Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L.R.A.(N.S.) 643, 116 Am. St. 422, 9 Ann. Cas. 935: "The testimony of a witness that he did not hear a bell rung is thus of itself, as against direct and positive testimony of another that the bell did ring, no evidence that it did not ring, but, taken in connection with evidence showing that the witness could and probably would have heard it, had it been rung, and that he was listening to hear it ring, is evidence that it did not ring." Under this rule, carefully stated in the opinion and fortified by authority, we agree with the learned trial court that there is not sufficient probative force in this so-called negative testimony, even if coupled with a presumption that the deceased in the exercise of due

care would not have attempted to go between the cars had he heard it ringing, to permit a jury to say that it did not ring when there is such positive and direct evidence that the automatic bell was started and was ringing as soon as and while the locomotive was moving on track 2. To hold otherwise would be to let mere conjecture (for that is all that can be got out of the witnesses who testify to not knowing whether or not the bell did ring) overcome positive evidence which is neither inherently improbable nor discredited by the established facts.

The impeachment of the witness Lee, who testified that he heard it ring, is of so doubtful a character as not to be of any weight. It is so easy to misunderstand one another in these interviews between one who has witnessed an accident and the attorney or claim agent of an interested party. This also applies to the impeachment of certain other witnesses. What little weight might attach thereto should not be permitted to do away with a fact established by direct positive evidence of unimpeached witnesses.

There is nothing in the point that there was a failure of the men to observe the custom of warning each other of danger and because of such failure Plachetko was injured, for there was no evidence that any one saw him start to go between the cars, or knew that he intended to cross until too late to prevent the accident.

One of the assistant foremen, who called out the warning to the men, incidentally testified to the fact that he passed over between cars further away from the locomotive just about the time Plachetko was caught. After a long cross-examination in which the witness stated that he did not hear the bell; that he was then giving that matter no attention; that he knew what he was doing when he ran across the track, he was asked the further question: "Well, if you took the risk of going in between there within 9 car lengths of the engine, don't you think you were pretty sure that you had not heard the bell, or you never would have gone through there?" The objection that the question was argumentative and the matter gone over was sustained. We think both grounds of the objection proper.

We discover no reversible ruling, nor any evidence which might charge defendant with negligence causing the distressing death of plaintiff's intestate.

Order affirmed.