### Roy Pence, by Manford Pence, Defendant in Error, v. Walker D. Hines, Director General of Railroads, Plaintiff in Error.

1. NEGLIGENCE—*imputation of driver's negligence to guest.* The negligence of the driver of an automobile cannot ordinarily be imputed to a person who is riding with him, in case of a collision, but such person is responsible for his own negligence, and if his own negligence contributes to the injury he cannot recover.

2. RAILROADS—*contributory negligence of guest in automobile.* A strong, healthy boy 18 years old, who, while riding in an inclosed automobile with his father, who was driving, was struck by defendant's train at a crossing, was guilty of contributory negligence where both he and his father were thoroughly familiar with both the automobile and the crossing, and where the boy must have seen the approaching train had he looked, as it was clearly visible for a quarter of a mile away, and where, by reason of noise which the automobile was making, he could not have heard the signals from the train had any been given.

3. NEGLIGENCE—*degree of care required of minors.* The rule that a minor is expected to exercise that degree of care which a person of his age, experience, intelligence, capacity and discretion would naturally and ordinarily use, applied in the case of a boy 18 years old who was injured at a railroad crossing while riding with his father in an automobile.

Error to the Circuit Court of Greene county; the Hon. NORMAN L. JONES, Judge, presiding. Heard in this court at the October term, 1920. Reversed with finding of fact. Opinion filed May 4, 1921.

PATTON & PATTON and T. I. McKNIGHT, for plaintiff in error; WILLIAM L. PATTON, HENRY L. PATTON, T. I. McKNIGHT and SILAS H. STRAWN, of counsel.

W. L. WINN and D. J. SULLIVAN, for defendant in error.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

Plaintiff in error sues out this writ of error to reverse a judgment rendered in the circuit court of Greene county for $1,000, in an action on the case brought by defendant in error to recover damages for personal injuries sustained by him as a result of a collision between an automobile in which he was riding and a freight train operated by plaintiff in error.

The case went to the jury upon the issues presented by the first counts of the declaration. The first count charges common-law negligence, and the second the failure to ring the bell or blow the whistle of the engine in accordance with the statute.

Plaintiff in error at the time of the accident was operating the Chicago & Alton Railroad, which at the locality in question runs east and west. A public highway also runs east and west about 60 feet south of the crossing, parallel with the railroad track, which is a single one. The railroad track is elevated from 4 to 7 feet above the level of the highway. This highway turns north at the place in question, crosses the railroad track, and then branches to the west and northeast. A short distance east of where the highway turns north to cross the railroad tracks there is a highway bridge, referred to in the evidence as a culvert. Just as the highway turns north and about 8 feet north of the north line thereof, at the time of the accident, was a mudhole. From this point north to the tracks for a distance of 55 feet there was an ascending approach to the crossing. There were two lines of telephone or telegraph poles running east and west between the railroad track and the highway, one upon the north line of the highway and one about midway between the highway and railroad track.

There were no other obstructions of any kind between the highway and the tracks. The telegraph or telephone poles did not interfere with a clear view of the tracks from the highway either where it runs east and west or where it runs north in its approach to the tracks. Defendant in error and his father, shortly before the accident, were riding in a Ford car driven by the latter going west on the highway, about 5 o'clock p. m., January 27, 1919, and when they arrived at a point a short distance east of the culvert they met the witness Rives who was going east in an automobile. Both automobiles stopped and defendant in error and his father got out of their car and Rives got out of his car and they all visited together for a short time. Thereupon defendant in error and his father got into their Ford automobile and started west on the highway turning north thereon towards the railroad tracks. The curtains on their car were down and the only view the occupants had of the tracks east of them was through an isinglass in the curtain 6 inches wide and 18 inches long. The father of the defendant in error was driving the car and he told defendant in error to look out for trains on the track. When they reached the mudhole in the highway the father of defendant in error threw the gear of the car into first speed, in order to have sufficient power to drive the car through it. He testified that this Ford car when in first speed made considerable noise which was intensified inside of the car by the fact that all the curtains were down around the top. The evidence clearly shows beyond controversy that for a distance of at least 40 feet south of the tracks there was a clear and unobstructed view thereof for a distance of a quarter of a mile east of the crossing. About this time another car proceeding south along this highway stopped north of the tracks for an approaching freight train going west to pass. This car contained three men, the driver of which saw the

approaching train 220 yards east of the crossing, and stopped his car to allow it to pass. Defendant in error and his father after passing through the mud-hole proceeded very slowly between 4 and 5 miles per hour in low speed north towards the crossing. Defendant in error testified that he looked towards the east through the isinglass in the curtain and did not see any train approaching. His father testified that he did not see the train approaching. Both of them testified that no bell was rung or whistle blown. Rives testified that after talking with defendant in error and his father he went to get into his car and saw the approaching train, and after he had started his car he looked back to see if defendant in error and his father were going to be hit by the train. He also testified that the bell on the engine was not ringing. An approaching train would have been plainly visible to anyone on the highway for a distance of a quarter of a mile east. Defendant in error was a strong, healthy young man 18 years of age, and both he and his father were perfectly familiar with the crossing and with the operation of the Ford car. The train collided with the automobile and threw defendant in error and his father therefrom. Defendant in error received an injury on his head which he testified has resulted in his being subjected to headaches. The highest speed of the train that any of the witnesses testified to was 40 miles an hour. The people in the automobile waiting on the north side of the crossing did not testify as to whether they heard the whistle blow or the bell ring. The train crew testified that the bell was automatic and had been ringing all the time since it left the last station.

The negligence of the driver of an automobile cannot ordinarily be imputed to a person who is riding with him in case of a collision, but such person is responsible for his own negligence, and if his own negligence contributes to his injury he cannot recover.

In the case of *Opp v. Pryor,* 294 Ill. 538, it was held: "It was essential for the plaintiff to prove that she was in the exercise of ordinary care for her own safety in approaching and going upon the crossing, and she was not relieved from that duty because she was riding in an automobile. If she exercised such care any negligence of Ethel Shambaugh could not be imputed to her, but she would be responsible for her own negligence. The plaintiff sat at the right of the driver in front, with at least equal opportunity to observe danger and the approach of the train, and being bound to prove the exercise of ordinary care by herself, it was no less her duty than that of the driver to observe and avoid danger, if practicable, and to warn the driver. (*Flynn v. Chicago City Ry. Co.,* 250 Ill. 460; *Pienta v. Chicago City Ry. Co.,* 284 Ill. 246.)" Defendant in error sat on the right or east side of the car, and his father sat on the left or west side thereof, and it was much easier for the defendant in error to observe the tracks toward the east than it was for his father, who would have to look past the body of defendant in error and through the narrow isinglass slit in the curtain, and besides his father was driving the car, and his attention was necessarily directed mostly towards the north, in the direction in which the car was going. Defendant in error was a minor but was a strong and healthy boy, and thoroughly familiar with the location of the highway and the railroad tracks and with the operation of the automobile. A minor is expected to exercise that degree of care which a person of his age, experience, intelligence, capacity and discretion would naturally and ordinarily use. *Hartnett v. Boston Store of Chicago,* 265 Ill. 331; *McGuire v. Richard Guthmann Transfer Co.,* 234 Ill. 125; *Star Brewery Co. v. Hauck,* 222 Ill. 348; *Illinois Iron & Metal Co. v. Weber,* 196 Ill. 526. The evidence shows that defendant in error was of sufficient age, intelligence, capacity, discretion and ex-

perience to understand and appreciate the danger of attempting to cross the railroad track in an inclosed automobile, which was making such a noise that in all probability he could not have heard the signals of the train if any had been given, without taking the precaution to look and see whether a train was approaching. It is true that he testified that he did look and failed to see the train, but this is quite impossible, because if he had looked he could not have failed to have seen it, and it is evident that his father was depending upon him to keep a lookout towards the east for any train that might be approaching from that direction. Under the facts shown by the evidence it was clearly his duty to use ordinary care in crossing the tracks and to warn his father of the approaching danger. This he did not do, but was guilty of contributory negligence.

The judgment is reversed and the clerk is directed to embrace therein the following finding of ultimate fact: The court finds as an ultimate fact that the defendant in error was guilty of negligence which contributed to his injury.

*Reversed with finding of fact.*