## EDWARD WILLETT v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 15, 1922.

No. 23,082.

**Question for jury on issue whether train signals were given.**

1. Applying the rule of Cotton v. Willmar & S. F. Ry. Co. 99 Minn. 366, relative to the probative value of negative testimony, it is *held* that the evidence raised an issue for the jury as to whether warning signals were given as a train approached a highway crossing.

**Contributory negligence not proved.**

2. The proofs failed to show conclusively that plaintiff was guilty of contributory negligence in driving his automobile upon the crossing ahead of a moving string of cars.

**Erroneous admission of testimony cured when objector introduced similar evidence.**

3. Error in the admission of evidence, over defendant's objection, is cured by the subsequent introduction by defendant of evidence substantially the same as that which was erroneously received.

**Charge to jury.**

4. There was no error in the instructions.

**Verdict of $1,500 not excessive.**

5. The damages were not excessive.

[1]Reported in 191 N. W. 260.

Action in the district court for Wright county to recover $5,040 for injuries received at a highway crossing. The case was tried before Giddings, J., who denied defendant's motions for a directed verdict, and a jury which returned a verdict for $1,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Hoke, Krause & Faegre,* for appellant.

*John M. Rees,* for respondent.

LEES, C.

While crossing defendant's railway tracks in the city of St. Cloud, at about 3 o'clock in the morning of August 30, 1920, plaintiff was injured in a collision between an automobile he was driving and a flat car at the end of a string of cars which was being backed over the crossing. He brought this action for damages and recovered a verdict of $1,500. Defendant made the usual alternative motion for judgment or a new trial, and has appealed from a denial thereof.

The complaint alleged that defendant negligently failed to give signals, warning plaintiff of the approach of the train. The answer denied negligence and charged plaintiff with contributory negligence. Summarized, the material portion of plaintiff's testimony was as follows: He had never been over the crossing before; he approached it from the northwest, driving his car at a speed of about 25 miles an hour. Some 275 feet from the crossing there was a metal disc inscribed with a cross and the letters "R. R." He saw it and reduced the speed of his car to 10 or 12 miles an hour. There was a slight up-grade as he neared the tracks. He could have stopped his car in a space of 12 or 15 feet, had he attempted to do so. He heard no engine whistle, or bell or any other warning signal. He did not see the cars until he was almost upon the track and it was too late to stop. There had been a storm during the night and as he came into St. Cloud the wind was blowing. Arc lights suspended at street intersections were swinging to and fro in the wind. A white light was swinging above the tracks. He thought it was a street light. In fact it was the signal light on a wigwag main-

tained by defendant at the crossing to warn travelers of the approach of trains. Plaintiff testified that, if this light had been red, he would have known a train was coming and would have stopped. There was testimony that the greater portion of the red lens in the north end of the wigwag was broken and had fallen out, and had been out for 2 or 3 days. Plaintiff rested his case upon this proof.

The cars came from the east at a speed of about 6 miles an hour. There were 12 cars. The train crew was made up of an engineer, fireman, switch foreman and two switchmen. Each testified that as the cars approached the crossing the engine bell was ringing; that the whistle had been blown; that the signal light was swinging back and forth across the track; that an electric gong above it was ringing; that one of the switchmen, carrying a lighted lantern, stood on the flat car near the west end of the car; that plaintiff came to the crossing at a speed of about 40 miles an hour and dashed upon the rails in front of the cars; and that, when the switchman saw that a collision was imminent, he gave a stop signal, which was obeyed, the cars being stopped within 60 feet.

1. Defendant's first contention is that actionable negligence was not shown. It is argued that this is so because the members of the train crew were positive that the signals which the law requires were given, and, in addition, signals not required by law, while plaintiff's testimony is merely negative in character, being all to the effect that he did not hear or see the signals. In this state, the leading case on the subject of the probative value of negative testimony is Cotton v. Willmar & S. F. Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L. R. A. (N. S.) 643, 116 Am. St. 422, 9 Ann. Cas. 935. Its application to the case at bar leads to the conclusion that plaintiff's testimony raised an issue for the jury. Plaintiff was in a position to see and hear the signals, if they were given. He knew he was about to cross the tracks. The highway and the railroad intersect at an angle of 17½ degrees, and as he drew near the crossing he would be looking towards the cars and would have seen the switchman's lantern, if a light was displayed at the end of the flat car. There was no evidence that his eyesight and hearing were not normal. There was nothing to divert his attention.

2. The next contention is that plaintiff was guilty of contributory negligence as a matter of law. The basis of the contention is that plaintiff was traveling too fast, that, if he had come to the crossing at a reasonable rate of speed, he would have seen and heard the cars as they approached. In short, that, with knowledge that railroad tracks were ahead, he proceeded recklessly, either making no effort to see whether the way was clear, or, knowing that a train was coming, he tried to cross ahead of it. The morning was dark. A lighted lantern on a flat car is not conspicuous. There were side curtains on the automobile which would shut out sound to some extent. The white light swinging from the arm of the wigwag might be mistaken readily enough for a street light blown about by the wind. The jury might well enough have found that plaintiff did not know that the cars were coming. There is more force to the argument that he was traveling too fast. However, if the jury believed his testimony, he could have stopped within a space of 15 feet. Under the circumstances related by plaintiff, we cannot say that he was negligent as a matter of law in driving upon the crossing at a speed of 10 or 12 miles an hour.

3. During the afternoon of the day of the accident, the switch foreman and the engineer called on plaintiff while he was in a St. Cloud hospital. Over defendant's objection, plaintiff testified that, in the course of their conversation with him, they told him that the wigwag had been out of order for two or three days. The objection should have been sustained. Rosted v. Great Northern Ry. Co. 76 Minn. 123, 78 N. W. 971. If this had been the end of the matter, it might well be urged that prejudicial error was committed. But later in the trial defendant called both men as witnesses in its behalf. In response to questions asked by defendant's counsel, the switch foreman testified that at the hospital the engineer did say to plaintiff that the wigwag signal-light had been out of order for two or three days, and, on cross-examination, that the engineer said to plaintiff: "The red light was broken out and had been broken for a few days." We are of the opinion that this cured the error. Anderson v. St. Croix Lbr. Co. 47 Minn. 24, 49 N. W. 407; Lloyd v. Simons, 90 Minn. 237, 244, 95 N. W. 903. See also Wm.

Bergenthal Co. v. Security State Bank, 98 Minn. 414, 108 N. W. 301.

4. The court instructed the jury as follows:

"Plaintiff says that one of the inducements that caused him to cross the track at that time, one of the elements, one of the factors leading up to this collision was because he received no signal, no warning from this so-called wigwag signal."

Plaintiff testified on cross-examination that he paid no heed to the signal light; that it meant nothing to him; and that he did not take it as an invitation to cross the tracks. It is urged that there was prejudicial error in the instructions in view of plaintiff's express admissions. The language quoted was immediately followed by these words:

"He claims that the defendant company was negligent in this, that having supplied this device, erected this signal for the purpose of warning the public, it failed to properly maintain it. * * * Whether defendant did fail to properly maintain it is a question of fact for you to determine. * * * Plaintiff says, to cut it short, that the collision came about by reason of the failure of the defendant to give him suitable and proper warning, either by signal, bell, whistle or otherwise, and that by reason of such failure he went upon the crossing and the collision resulted."

The instruction, read as a whole, is not open to the interpretation defendant puts upon it. The jury could hardly get the impression that plaintiff was claiming or could claim that he mistook the light for a signal to proceed across the tracks. The inducements the court referred to were the absence of warning signals. The meaning fairly attributable to the whole instruction is that, if the wigwag had been properly maintained, it would have displayed a red light and would have served to warn plaintiff of the near approach of the train.

5. Plaintiff was in the hospital 4 days and was then taken home. He had no broken bones and no external signs of injury except bruises upon his body. He weighed 184 pounds when injured and 152 pounds at the time of the trial 10½ months later. He testified

to a loss of appetite and to sleeplessness resulting from nervous shock. He had been an automobile machinist and was capable of earning from $100 to $150 a month. He testified that he was still unable to work at the time of the trial.

The trial judge refused to set aside or cut down the verdict as excessive and we see no reason for disturbing his conclusions as to this phase of the case.

Order affirmed.