## MAE FRANKLIN v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY AND ANOTHER.[1]

March 14, 1930.

No. 27,657.

[1]Reported in 229 N. W. 797.

*Tautges, Wilder & McDonald, F. M. Miner* and *Michael Levin,* for appellant.

*John E. Palmer* and *James L. Hetland,* for respondent railway company.

*Cobb, Hoke, Benson, Krause & Faegre, Paul J. McGough* and *Schoetz, Williams & Gandrey,* for respondent Ben Dick.

OLSEN, C.

Action by Mae Franklin, as mother and natural guardian of Jack Franklin, her minor son, to recover damages for personal injuries claimed to have been caused to the minor by negligence on the part of the defendants. There was a trial by jury. The jury failed to agree, and thereafter, on motions by the defendants, the court ordered judgment in favor of each defendant. Plaintiff appeals from the judgment.

Jack Franklin, a boy about 15½ years of age, was injured in a collision between a truck, wherein he was riding, and a freight train of the defendant railway company. The accident happened on August 22, 1927, in the state of Wisconsin, in open level country where a rural highway known as No. 45 crosses the railway track. The railway runs east and west. Highway No. 45 runs north and south. Running east and west, paralleling the railway and at a distance of about 100 feet north thereof, is the paved state road No. 10. Defendant Ben Dick, residing at Marshfield, Wisconsin, owned and operated a truck for commercial purposes. At the time of the accident he was hauling boxes or containers to a cheese factory out in the country. He is an uncle of Jack Franklin, and the boy was visiting and staying with him and had been there since June 4. The evidence is in dispute as to whether the boy was employed by and receiving wages from his uncle. It is undisputed that the uncle had given the boy some small compensation or gifts in addition to board and lodging; that the boy had accompanied him on some 10 or 12 similar trips out in the country upon which trips railroads were crossed; that he assisted his uncle in handling boxes and other freight transported whenever required or requested; that he had been instructed by his uncle to watch out for trains at

railroad crossings, that that was his job; and that he had watched out for trains on such trips.

On the morning of the accident the boy and his uncle were traveling east on No. 10, parallel to the railroad, and had been so traveling for some five or six miles. Dick was operating the truck. The two were sitting on the seat in the cab of the truck, the boy on the right, the side towards the railroad track. The window of the cab next to the boy was open. Road conditions were good; the weather had been misty but had brightened up before the accident and visibility was good. There was nothing between the highway and the track to obstruct the view. So traveling, they came to where highway No. 45 crosses state highway No. 10 and then goes south across the railroad track. On approaching the turn, Dick slowed down to about 15 or 20 miles an hour. He then turned south onto No. 45 to cross the railroad track, and the truck, back of the cab, was struck by a freight train traveling east. The distance from the center of state highway No. 10 to the center of the railroad track at this point is 110 feet. The rate of speed of the truck while traveling on No. 10 was 25 to 30 miles an hour. The speed of the train is given as about 30 miles an hour. For about two miles the truck had been traveling some 500 or 600 feet ahead of the train. At the railroad crossing there was the ordinary large sign to look out for the cars. As they turned to cross the track the boy saw the sign, which was on the west side of highway No. 45 and in the direction from which the train was approaching. The train was in full view of anyone in the cab of the truck and looking to the west, at all times after the truck turned onto highway No. 45. The boy testified that, when he saw the sign, he turned and looked to the east; that he then turned and looked to the west, saw the train close by and shouted "stop," but the truck was then within a few feet of or right up to the track and it was too late to stop; that he did not know they were to cross the track at this point until the truck started to turn onto highway No. 45; that he did not see or hear the train until he so looked to the west, when the train was almost upon them.

The primary issues in the case as to the defendant railway company are whether it was negligent, and if so whether it thereby

directly caused the accident, without the intervention of any other efficient, independent cause, so that its negligence was the proximate cause of the injury.

The statute of Wisconsin provides that when running a train over a traveled grade highway crossing the whistle shall be blown when 80 rods from such crossing and the engine bell rung continuously from thence until such crossing is reached by the train. It further provides that slight want of ordinary care by a person injured shall not bar a recovery for injury or death caused by the negligent omission of the railway company to comply with the requirements of the statute. Plaintiff pleads and relies upon these provisions of the statute.

On the question whether the whistle was sounded, the evidence is practically conclusive that it was properly sounded. The engineer, fireman, and head brakeman, who were on the engine at the time, each testified that the bell was ringing. As against this there is the testimony of the boy and his uncle in the truck that they did not hear either the bell or the whistle or any sound from the train; and the testimony of a lady, who was in a car at or near the intersection of the two highways some 80 feet north of the railway track, that she heard no signals. She admits that she was not paying any attention to signals. Other witnesses were not asked by either party as to the ringing of the bell. That the boy and his uncle either were not paying any attention to trains or signals or else disregarded what they heard and saw seems apparent. The train was a long freight train of 55 cars and was making the usual rattle and noise of such a train. Assuming that the truck was going at the rate of 20 miles an hour and the train twice as fast, the train would have been not more than 200 feet from the crossing and in plain view as the truck turned from highway No. 10; and as the truck was traveling the 100 feet from the turn to the crossing the train was continuously approaching until the collision happened. Both the uncle and the boy appear to have wholly disregarded the known danger ahead of them until too late. They had been traveling east alongside the railroad right of way for some time and the

view in front of them to the east along the railroad track was unobstructed. Any train from that direction would have been in plain view as they turned onto highway No. 45. There was no apparent occasion or necessity for looking to the east after the turn was made. The natural and proper thing to do was to look to the west, from which direction a train might be approaching without their having seen it up to that time.

The burden of proof rested on the plaintiff to prove by a preponderance of the evidence that defendant railway was negligent and that such negligence was the proximate cause of the accident. If the evidence was not sufficient to go to the jury on the issue of negligence, then the court should have directed a verdict on that ground, and its subsequent order for judgment was correct.

Upon the evidence here presented a finding that proper signals by the whistle and bell were not given is difficult to sustain. Plachetko v. C. B. & Q. R. Co. 139 Minn. 278, 166 N. W. 338; Hollister v. Hines, 150 Minn. 185, 184 N. W. 856; Lawson v. M. St. P. & S. S. M. Ry. Co. 174 Minn. 404, 219 N. W. 554; Linden v. M. St. P. & S. S. M. Ry. Co. 156 Wis. 527, 143 N. W. 167. The value of negative testimony as to not hearing a whistle or bell depends upon the situation of the witness at the time, the surrounding circumstances, and the degree of attention he is giving to the matter. Where it is clear that the noise of a long freight train and the sounding of its whistle were clearly within the hearing of a person and he testifies that he heard nothing, his testimony must be accounted for either by lack of recollection or entire failure of attention to sounds.

The decisions upon the question necessarily depend on the particular facts in each case; hence numerous cases are found which can be cited on either side. The case of Setosky v. D. S. S. & A. Ry. Co. 173 Minn. 7, 216 N. W. 245, is relied upon by plaintiff. In that case two disinterested witnesses, who were interested in the train and in a position to hear, testified that they did not hear the bell. They did not testify that they paid no attention to sounds and heard none. Both testified that they heard the train whistle and heard the collision, and one of them that he heard the noise of the train before the collision. It did not appear therefore that they

were not paying attention or that they did not hear or recollect sounds actually made. Many other cases are cited, such as Cotton v. W. & S. F. Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L.R.A.(N.S.) 643, 116 A. S. R. 422, 9 Ann. Cas. 935; Willett v. G. N. Ry. Co. 154 Minn. 10, 191 N. W. 260; Perkins v. C. M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758; Fink v. N. P. Ry. Co. 162 Minn. 365, 203 N. W. 47; Kaufmann v. C. M. & St. P. Ry. Co. 164 Wis. 359, 159 N. W. 552, 1067. To analyze each case would take more time and space than we can here give.

If we were to assume that there was evidence to go to the jury on the question of signals, then 'the question whether Jack Franklin was guilty of such contributory negligence as to bar recovery is presented. As stated by the court and disclosed by the record, he was a bright, intelligent boy. While it cannot be held that he was engaged in a joint enterprise with the driver of the truck or that the negligence of the driver can be imputed to him, yet he was more than a mere guest or passenger in the truck. He was an assistant of the driver, and one of his duties was to watch out for trains at railroad crossings. He had accepted and undertaken to perform that duty. Aside from the actual operation of the truck, his duty to look out for trains and give warning thereof was equal to and as great as that of the driver. The evidence shows a negligent disregard of that duty by both the driver and the boy, resulting in the accident. Heedlessly going upon a railroad track immediately in front of an approaching train is more than slight negligence. The trial court held as a matter of law that the driver of the truck was negligent in failing to look and listen for trains before going into danger, and that holding is not seriously challenged even by the defendant driver. If the boy owed an equal duty to look and listen, and that would seem specially applicable as to looking on his side of the cab, then he was equally negligent.

Numerous cases are cited on this question of contributory negligence by both parties. Practically all of them refer to cases where the plaintiff was a mere guest or passenger. The Wisconsin court appears to require a higher degree of care on the part of a guest

passenger than is required in this state. Dummer v. Milwaukee Elec. R. & L. Co. 108 Wis. 589, 84 N. W. 853; Howe v. Corey, 172 Wis. 537, 179 N. W. 791; Olson v. Hermansen, 196 Wis. 614, 220 N. W. 203, 61 A. L. R. 1243. Our own rules on the subject are stated in Carnegie v. G. N. Ry. Co. 128 Minn. 14, 150 N. W. 164. But as already noted, the boy, Jack Franklin, was more than a mere guest or passenger, and the rule as to them does not apply. Molden v. M. St. P. & S. S. M. Ry. Co. 160 Minn. 471, 200 N. W. 740, is interesting as showing that where the relations between the driver and his companion in the car are more than that of driver and mere guest or passenger the rule in guest or passenger cases does not apply.

In Klande v. G. N. Ry. Co. 163 Minn. 123, 203 N. W. 773, plaintiff was the helper of a truck driver and was riding with him in the truck. There was evidence that plaintiff had been requested to look out for trains. The court denied a requested instruction by defendant that plaintiff and the driver of the truck were mutually charged with the duty of using ordinary care to avoid a collision with trains and, that if either man failed to exercise ordinary care in looking and listening for approaching trains and such failure was a proximate cause of plaintiff's injuries he could not recover. The court charged in accordance with the rules stated in Carnegie v. G. N. Ry. Co. 128 Minn. 14, 150 N. W. 164. It was held that the court erred in charging that the plaintiff was under no greater duty to exercise care for his own safety than a passenger or guest. The court said that plaintiff was not a mere passenger and did not have the right to rely wholly on the driver's vigilance. He had an active duty to perform. He had a better view of the track on his side than the driver. He was not at liberty to assume that the driver would look to see whether a train was coming from his side. He sat on the side from which the train came, and the cab window was open.

The following additional cases may be cited: Davis v. C. R. I. & P. Ry. Co. (C. C. A.) 159 F. 10, 16 L.R.A.(N.S.) 424; Erie R. Co. v. Hurlburt (C. C. A.) 221 F. 907; Fluckey v. So. Ry. Co. (C. C. A.) 242 F. 468; Hall v. W. J. & S. R. Co. (C. C. A.) 244 F. 104; Noble

v. C. M. & St. P. Ry. Co. (C. C. A.) 298 F. 381; Parramore v. D. & R. G. W. R. Co. (C. C. A.) 5 F. (2d) 912; A. T. & S. F. Ry. Co. v. Spencer (C. C. A.) 20 F. (2d) 714; Kutchma v. A. T. & S. F. Ry. Co. (C. C. A.) 23 F. (2d) 183; Pence v. Hines, 221 Ill. App. 584; Opp v. Pryor, 294 Ill. 538, 128 N. E. 580; G. T. W. Ry. Co. v. Cather (Ind. App.) 163 N. E. 622; Brown v. McAdoo, 195 Iowa, 286, 188 N. W. 7; Anthony v. Keifner, 96 Kan. 194, 150 P. 524; Kirby v. K. C. K. V. & W. Ry. Co. 106 Kan. 163, 186 P. 744, 18 A. L. R. 299; Smith v. Maine Cent. R. Co. 87 Me. 339, 32 A. 967; Grant v. C. M. & St. P. Ry. Co. 78 Mont. 97, 252 P. 382; Seiffert v. Hines, 108 Neb. 62, 187 N. W. 108; Morningstar v. N. E. P. R. Co. 290 Pa. 14, 137 A. 800; Lawrence v. D. & R. G. R. Co. 52 Utah, 414, 174 P. 817; Harris v. S. P. & S. Ry. Co. 123 Wash. 274, 212 P. 187; White v. M. St. P. & S. S. M. Ry. Co. 147 Wis. 141, 133 N. W. 148.

The burden of proving contributory negligence rested on the defendants, and whether there was any evidence to go to the jury on that question is to be decided by the law of this state as determined by our own decisions. We reach the conclusion that Jack Franklin was as a matter of law guilty of such negligence as to bar recovery.

Any error in the court's charge is not here material, nor do we hold that there was any such error. There is no basis for the application of the sudden peril rule. Neither do we find any basis for holding this boy excused on account of his age.

Judgment affirmed.

WILSON, C. J.
I dissent.